**Juan Sergio Carreon TOLEDO, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 01-15-00559-CR**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued April 6, 2017

Patrick F. McCann, 909 Texas Avenue, Suite 205, Houston, TX 77002, for Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Dan McCrory, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Justices Keyes, Bland, and Huddle.

## OPINION

Jane Bland, Justice

This case presents challenges to the constitutionality of Texas Penal Code Section 21.12. The State charged Juan Sergio Carreon Toledo with the offense of engaging in an improper relationship between an educator and a student, a second-degree felony. *See* Tex. Penal Code Ann. § 21.12 (West Supp. 2016). Carreon entered a guilty plea to the charged offense without an agreed recommendation as to punishment. The trial court ordered a pre-sentencing investigation and held a punishment hearing, during which it admitted the PSI report into evidence. At the hearing's close, the trial court assessed Carreon's punishment at fifteen years' confinement.

Carreon moved for a new trial, which the trial court denied. On appeal, Carreon challenges that ruling, contending that (1) section 21.12 violates due process and equal protection constitutional provisions because it criminalizes consensual sexual relationships with students who have reached 17 years of age, as the complainant was in this case; (2) the trial court's 15-year sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment; and (3) his trial counsel rendered ineffective assistance during the punishment phase. We hold that Carreon has not demonstrated a constitutional violation or ineffective assistance. We therefore affirm.

## BACKGROUND

From the summer of 2014 until his arrest, Carreon worked as the girls' varsity soccer coach at a high school in Harris County, Texas. That fall, Carreon began texting with a 17-year-old student who was a high school senior on the soccer team "in a flirty way." Their communications led to clandestine hotel encounters and an intimate sexual relationship. Carreon and the student met at locations away from school several times and had sexual intercourse on three of those occasions. The student attempted to end the relationship with Carreon that December. But they had another sexual encounter in January 2015 on the school grounds. In describing that encounter, which took place in the school's soccer storage room, the student told police that she voluntarily kissed Carreon, but that he then blocked the door and coerced her into performing oral sex.

Rumors began to circulate at the school. Initially, Carreon lied about the relationship and told the high school principal that

the student was lying about their relationship to her friends. When confronted by the principal, the student also denied the relationship. The school suspended the student for starting the rumors, and the student's father came to the school to apologize to Carreon on his daughter's behalf. A later police investigation revealed that the rumors were true. The student recounted the nature of the relationship to police. When confronted with evidence from the police investigation, Carreon admitted to the relationship.

Carreon perceived the relationship with the student as consensual, but acknowledged understanding "how this incident can have a negative effect on a young girl." The student stated that Carreon made her "feel that the only way I'd continue to get his help with college recruitment and continue to be the star player and get play[ing] time was to keep doing sexual things with him."

The student's father testified at the punishment hearing about the adverse effect the relationship with Carreon had on the student: other students mocked her, and the student quit the soccer team to avoid taunts from other players and their parents during matches. The student stopped attending school for a period of time to avoid the harassment. She provided a statement for the PSI report in which she detailed her struggles with suicidal thoughts that led her to seek psychiatric treatment.

## DISCUSSION

### I. Due Process and Equal Protection Challenges

Carreon challenges the facial constitutionality of section 21.12 on three grounds: (1) under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, citing *Lawrence v.*

*Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); (2) under the Equal Protection Clause of the Fourteenth Amendment; and (3) under the due course of law provision of the Texas Constitution. We address these challenges in turn.

### A. A facial challenge must show that any interpretation of the statute is unconstitutional.

██ A facial challenge attacks the statute itself rather than a particular application of it. *City of Los Angeles v. Patel*, —— U.S. ——, 135 S.Ct. 2443, 2449, 192 L.Ed.2d 435 (2015). A successful facial challenge to a statute's constitutionality requires a showing that the statute operates unconstitutionally in all possible circumstances; in other words, no set of circumstances exists under which the statute would be constitutionally valid. *Peraza v. State*, 467 S.W.3d 508, 514–15 (Tex. Crim. App. 2015); *Horhn v. State*, 481 S.W.3d 363, 372 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). Determining whether a statute is facially unconstitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Lopez v. State*, 493 S.W.3d 126, 138 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

██ The party who challenges a statute bears the burden to establish that it is unconstitutional. *Peraza*, 467 S.W.3d at 514. If a constitution interpretation is possible, then we interpret the statute in the way that upholds its constitutional validity. *Id.*; *Maloney v. State*, 294 S.W.3d 613 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). We presume that the legislature intended to enact a statute that comports with the Texas and federal constitutions. *See* Tex. Gov't Code Ann. § 311.021(1); *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). Bearing in mind this presumption, we examine section 21.12, to-

gether with the constitutional rights that Carreon contends it offends.

**B. Because Penal Code Section 21.12 furthers a legitimate state interest, it does not offend the federal constitution.**

Section 21.12 forbids a sexual relationship between an educator and a student enrolled in the school where the educator works. Carreon pleaded guilty under section 21.12, admitting that he was a licensed primary or secondary school employee who "engage[ ] in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled" at the school in which he worked. TEX. PENAL CODE ANN. § 21.12(a)(1). The statute specifies that it applies "regardless of the age" of the student. *Id.* § 21.12(a)(3).[1]

Carreon concedes that he committed the offense, but he argues that it allows for a conviction for consensual adult sexual conduct, and the statute's criminalization of that behavior is constitutionally prohibited.

**1. The right recognized in *Lawrence v. Texas* is not an unlimited right to engage in sexual conduct.**

Carreon contends that section 21.12 is constitutionally prohibited because a constitutional right exists to engage in private, consensual sexual conduct with an adult person, and the statute offends this right by criminalizing conduct between an educator and a student who has attained the age of consent in Texas, which is 17 years. We first determine whether the right that Carreon identifies—the right of adults to engage in private, consensual sexual conduct, including conduct between school employees and those students over the age of

consent—is a fundamental one in constitutional jurisprudence, requiring less deference to the state's rationale for enacting the statute prohibiting that conduct.

■ A fundamental right or liberty interest is one that is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U.S. 760, 775, 123 S.Ct. 1994, 2005, 155 L.Ed.2d 984 (2003). If a challenged statute interferes with a "fundamental right," then we uphold its constitutionality only if it is narrowly tailored to serve a compelling state interest. *Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000); *State v. McNutt*, 405 S.W.3d 156, 161–62 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). In contrast, a challenged action that does not involve a fundamental right does not violate the Constitution as long as it furthers a legitimate state interest "that could 'justify its intrusions into the personal and private life of the individual.'" *Ex parte Morales*, 212 S.W.3d 483, 493 (Tex. App.—Austin 2006, pet. ref'd) (quoting *Lawrence*, 539 U.S. at 578, 123 S.Ct. at 2484).

■ Carreon contends that we should review section 21.12 with strict scrutiny and require that the State demonstrate a compelling state interest for criminalizing conduct between an educator and a 17-year-old student. In *Lawrence*, the United States Supreme Court held that the due process clause of the Fourteenth Amendment affords consenting adults the right to engage in private sexual relationships free from government intrusion. 539 U.S. at 558, 578, 579, 123 S.Ct. 2472. However, the Court in *Lawrence* did not hold that right

---

1. Section 21.12 has two affirmative defenses, permitting the educator to avoid prosecution if (1) the defendant and the student were married at the time of the offense, or (2) the defendant was not more than three years older than the student and the relationship began

before the defendant's employment at the school. TEX. PENAL CODE ANN. § 21.12(b-1), (b-2) (West Supp. 2016). Neither of these defenses applies to Carreon's relationship with the student in this case.

to be available in all circumstances or describe it as a fundamental right. Rather, the Supreme Court recognized that the liberty interest that it recognized did not extend to sexual conduct involving prostitution, minors, or—important to this case—"persons who might be injured or coerced or who are situated in relationships where consent might not be easily refused." *Id.* at 578, 123 S.Ct. at 2484. The Court in *Lawrence* did not characterize the right it recognized as demanding strict scrutiny of all statutes governing sexual conduct—rather, the court applied the rational basis test in rejecting the statute under review in that case. *See id.* (determining only whether statute "further[ed a] legitimate state interest" that could "justify its intrusion into the personal and private life of the individual"); *see also Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 745 n.32 (5th Cir. 2008) ("*Lawrence* did not categorize the right to sexual privacy as a fundamental right."). Given the limits expressed in *Lawrence*, and its application of a rational basis test in that case, we apply the rational basis test and examine whether section 21.12 furthers a legitimate state interest.

## 2. Providing a safe environment free from coercive sexual conduct in compulsory educational settings is a rational state interest.

█ Texas has a rational interest in prohibiting sexual conduct between teachers in its primary and secondary schools and the students in their schools. First, the power imbalance inherent in a teacher-student relationship makes a student susceptible to coercion and unable to easily refuse an educator's implicit or explicit demands. *See Lawrence*, 539 U.S. at 578, 123 S.Ct. at 2484. This power imbalance is present in secondary schools whether the student is sixteen, seventeen, or eighteen. Attendance generally is compulsory for students enrolled in high school. *See* Tex. Educ. Code Ann. §§ 25.085, 25.086 (West 2012 & Supp. 2016). After arriving at school, students must spend the day on campus unless they have permission to be elsewhere. *See id.* § 25.087 (West Supp. 2016). "If employees in positions of authority enter into sexual relationships with students that they teach, coach, counsel, etc. on a regular basis; mental or physical harm to the student as the result of the relationship is almost guaranteed." Elkins, Paul, *Text But Don't Touch: Making [Non]sense of Texas Teacher-Student Relationships*, 1 Tex. A. & M. Law Rev. 703, 723 (2014). The record shows that the sexualized power dynamic adversely affected the student in this case: she withdrew from school for a period, suffered from suicidal thoughts, and required psychiatric treatment.

Second, the state has a legitimate interest in preserving an educational environment conducive to learning. *See Ex parte Morales*, 212 S.W.3d 483, 496–98 (Tex. App.—Austin 2006, pet. ref'd). Educators and students, as well as those who pay for a school's operations, are entitled to preserve an environment where learning is paramount and the distractions of a sexually charged atmosphere—affecting students both under and over the age of consent—are not tolerated. The record in this case exemplifies the problems that can arise when other students are exposed to a teacher-student relationship. The student told some of her friends about her relationship with Carreon, and Carreon behaved inappropriately toward the student in a manner that some of the other students noticed. Ultimately, the student victim became an object of ridicule among her peers, quit soccer after 10 years of playing

it, had suicidal thoughts, and sought psychiatric counseling.

In *Ex parte Morales*, the Austin Court of Appeals cited similar reasons in rejecting a due process challenge that closely resembles the one Carreon raises. *See* 212 S.W.3d at 494–98. In that case, a private secondary school in Texas employed the defendant. *Id.* at 486. The indictment charging Morales under section 21.12 alleged that he knowingly and intentionally engaged in sexual intercourse with a student at the school who was not his spouse. *Id.* at 487. Morales sought pretrial habeas corpus relief, claiming that a "fundamental liberty interest in 'private sexual conduct between consenting adults' " protected him from prosecution. *Id.* Like Carreon here, Morales contended that section 21.12's "impact on sexual conduct between school employees and those students over the age of consent renders it unconstitutional." *Id.*

The *Morales* court concluded that educator-student relationships like the one before it fall on the other side of the line drawn in *Lawrence*. *Id.* at 495–96. It observed that school employees are vested with trust by the school, parents, and public, and that the legislature has a legitimate interest in preserving that trust by imposing a blanket prohibition to keep school employees from "misusing their access to students as a conduit for sex." *Id.* at 496; *accord Berkovsky v. State*, 209 S.W.3d 252, 253 (Tex. App.—Waco 2006, pet. ref'd); *see also In re Shaw*, 204 S.W.3d 9, 18 (Tex. App.—Texarkana 2006, pet. ref'd) (holding that applicant was not entitled to relief from prosecution under section 21.12 on due process or equal protection grounds because state has legitimate interest in protecting "students . . .—even those of age—from the pressures, emotional strain, conflicts, distractions, and other difficulties brought on by sexual conduct

with persons, not their spouse, employed at the students' schools").

Texas has rational reasons for enacting and enforcing section 21.12: to protect primary and secondary students in its educational system from the sexual advances of teachers and to preserve and foster a safe atmosphere conducive to learning. The problem the statute aims to address is significant—Texas "reportedly leads the nation in teacher-student sexual assaults." Hon. Greg Abbott, Governor of Texas, State of the State Address (Jan. 31, 2017). We hold that section 21.12 bears a rational relationship to Texas's legitimate state interest in ensuring a safe educational environment and preserving the value of educational opportunities for every student in Texas. Thus, it does not offend the Due Process Clause of the Fourteenth Amendment.

### 3. Section 21.12 does not violate the equal protection clause of the United States or Texas Constitution.

Carreon next contends that section 21.12 violates the equal protection clause because Texas lacks a rational basis to either treat students over the age of consent as "uninformed children" or label teachers who engage in intimate relations with those students as felons.

Texas's equal protection clause guarantees similarly situated persons "equal protection under the laws of this State and of the United States." *Nonn v. State*, 117 S.W.3d 874, 881–82 (Tex. Crim. App. 2003). Carreon brings his claim under both the state and federal constitutions. Because the Texas Court of Criminal Appeals has held that the Texas equal rights provision and the federal equal protection provision are coterminous, we treat Car-

reon's state and federal claims as one. *See Cannady v. State*, 11 S.W.3d 205, 215 (Tex. Crim. App. 2000); *Modarresi v. State*, 488 S.W.3d 455, 464 n.4 (Tex. App.—Houston [14th Dist.] 2016, no pet.).[2] Because Carreon's equal protection challenge is grounded on an analysis similar to his due process challenge, we reject it for the same reasons.

■ If an equal protection challenge does not involve a fundamental right, the challenged government action does not violate equal protection "so long as unequal treatment of persons is based upon a reasonable and substantial classification of persons." *Vasquez v. State*, 739 S.W.2d 37, 43 (Tex. Crim. App. 1987). The reasons for rejecting Carreon's due process claim apply equally to his classification challenge: the power imbalance in the teacher-student relationship and the promotion of the State's educational goals provide a rational basis for prohibiting sexual relationships between educators and students on the same campus. Further, the statute is rationally drawn to exclude from its coverage relationships with students who are not at the same school and any teacher (1) who is married to the student at the time of the offense, or (2) who is not more than three years older than the student and was in a relationship with the student before the teacher was employed at the school that the student attends. *See* TEX. PENAL CODE ANN. § 21.12 (b-1).

We hold that the trial court acted within its discretion in rejecting Carreon's motion for new trial based on equal protection and due process challenges to section 21.12.

## 4. Section 21.12 does not offend the due course of law provision of the Texas Constitution for the same reasons that it comports with the federal constitution.

■ Carreon contends that section 21.12 is facially unconstitutional under Article I, section 19 of the Texas Constitution, which provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." Carreon acknowledges that the United States Constitution's due process clause protects the same basic rights as the Texas due course of law provision, but urges, based on Texas history and the express inclusion of the protection against disenfranchisement, that the Texas due course of law provision be construed as providing greater protection than the federal due process clause.

■ Contrary to Carreon's claim, the Texas Constitution's due course of law provision does not afford greater protection than the federal due process clause. *See Higginbotham v. State*, 416 S.W.3d 921, 926 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The clauses have textual differences, but Texas courts generally interpret the due course of law provision in the same way as its federal counterpart. *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995); *see Fleming v. State*, 341 S.W.3d 415, 416 (Tex. Crim. App. 2011) (Keasler, J., concurring) ("[T]his Court and the Texas Supreme Court have interpreted the due course of law provision to provide the same procedural rights and protections as the Due Process Clause."); *Fleming v. State*, 376 S.W.3d 854, 857

---

**2.** Carreon contends that the state constitution's provision provides broader protections, but he does not cite to any recent decision in which the Court of Criminal Appeals overruled its holding in *Cannady*. As an intermedi-

ate appellate court, we are bound to follow the Court of Criminal Appeals' precedent. *Ervin v. State*, 331 S.W.3d 49, 54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

(Tex. App.—Fort Worth 2012) ("[T]his court and the majority of Texas courts of appeals have repeatedly held that the due course of law provision provides the same protections as the federal Due Process Clause."), aff'd, 455 S.W.3d 577 (Tex. Crim. App. 2014); see also State v. Vasquez, 230 S.W.3d 744, 750-51 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that due course of law clause does not provide greater level of protection than Due Process Clause regarding state's loss or destruction of evidence in a criminal prosecution). Carreon does not point to any authority to support a broader reading of the state constitution's due course of law provision based on its inclusion of protection against disenfranchisement that would render section 21.12 unconstitutional. Accordingly, we reject his proposed interpretation of that language.

## II. Eighth Amendment Challenge

### A. Carreon gave the trial court notice of his Eighth Amendment challenge.

Carreon next complains that 15 years' confinement as punishment is disproportionate to other sentences imposed in Harris County for this offense and thus his punishment violates the Eighth Amendment's prohibition against cruel and unusual punishment. We first address the State's contention that Carreon failed to preserve this issue for review.

■ To preserve error for appellate review, an appellant must make a timely, specific objection, at the earliest opportunity, and obtain an adverse ruling. Tex. R. App. P. 33.1. Absent a specific objection, an appellant preserves nothing for review. Clark v. State, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). To meet Rule 33.1's requirements, the record must show that the defendant's objection "stated the grounds for the ruling that the complain-

ing party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). The rule does not require that an objection be made in "hyper-technical or formalistic" language, but the objecting party must still "let the trial judge know what he wants, why he thinks he is entitled to it, and ... do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." Pena v. State, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

Carreon did not object on Eighth Amendment grounds when the judge pronounced Carreon's sentence. Nor did his written motion for new trial cite to the Eighth Amendment or refer to "cruel and unusual" punishment. During the hearing on his motion for new trial, Carreon did not mention the Eighth Amendment or its prohibition of cruel and unusual punishment. Carreon, however, presented sentencing data "for the Court's consideration as to ... whether or not his sentencing is in proportion to both the offense and like and similar sentences through the county."

■ Carreon's reference to proportionality and the sentencing information he proffered during the hearing put the trial court on notice that the Eighth Amendment provided the basis for his sentencing complaint. Having concluded that Carreon preserved his Eighth Amendment challenge for appellate review, we proceed to consider its merits.

### B. Carreon does not meet the threshold for showing that his sentence violates the Eighth Amendment.

■ The Eighth Amendment does not require strict proportionality between

the crime and sentence; rather, it forbids extreme sentences that are "grossly disproportionate" to the crime. *Ewing v. California*, 538 U.S. 11, 21, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (plurality opinion); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Generally, punishments assessed within the statutory limits do not violate federal and state constitutional prohibitions of cruel and unusual punishment. *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972). Carreon's sentence of fifteen years is within the statutory range, which is two to twenty years.

Beyond the statutory range, to determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, we consider the severity of the sentence in light of the harm caused to the victim and the defendant's culpability, together with any prior offenses. *Simpson*, 488 S.W.3d at 323. In the exceptional case in which this threshold comparison supports an inference of gross disproportionality, we compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and those imposed for the same crime in other jurisdictions. *Id.* If this analysis validates an initial judgment that the sentence is grossly disproportionate, then the sentence is cruel and unusual. *Id.*

The evidence presented during punishment showed that Carreon's conduct caused the student substantial harm. The student believed that she had to continue the relationship with Carreon to receive playing time on the varsity soccer team and his assistance in obtaining a soccer scholarship. She was suspended based on Carreon's accusation that she was lying about their relationship and her "self-image was shattered from the names and talk at school." She no longer played soc-

cer. The student's emotional pain caused her to contemplate suicide and led her to seek counseling. Carreon later admitted culpability for the conduct, but only after the student was suspended and after the police confronted him with evidence that corroborated the student's account of the relationship. Further, the evidence supports a finding that an element of coercion colored the conduct perpetrated by Carreon against the student, particularly in the last incident, which took place in a storage closet on school property. Although Carreon denied having coerced the student into a sexual relationship at the punishment hearing, the student claimed that she did not consent to performing oral sex in the storage closet. The trial court was in the best position to evaluate Carreon's credibility on this matter. The significant harm that Carreon's offense caused was compounded by his delayed admission of culpability. After reviewing the record, we conclude that the trial court's sentence is not grossly disproportionate to the conduct so as to meet the threshold for establishing a constitutional violation.

Relying on data that he presented in a supplemental affidavit to his motion for new trial, Carreon emphasizes that the common punishment in Harris County for a violation of section 21.12 is deferred adjudication, in contrast to the fifteen-year sentence that the trial court handed down in this case. While deferred adjudication is an option, the statutory range of punishment applicable to a section 21.12 conviction is two to twenty years. In imposing sentencing in this case, the trial court focused on the gravity of the offense, Carreon's denial of it to school authorities to the detriment of the student, and his continued description of the conduct as a "mistake." The court heard evidence supporting both the coercive and the inten-

tional nature of the conduct, including that Carreon took measures to hide it, like asking the student to delete text messages and paying cash for hotel rooms. The trial court assessed a sentence that comes within the statutory range.

In *Simpson*, the statutory range for the defendant's second-degree felony robbery conviction was five to ninety-nine years. *Id.* The defendant appealed his 25-year sentence on Eighth Amendment grounds. *Id.* Because the sentence "fell well within the statutory range," the Court of Criminal Appeals did not compare the sentence to other sentences; rather, the Court concluded that the sentence was not grossly disproportionate and thus it did not cross the threshold requirement for a comparative examination of sentences meted out in other cases. *Id.*

The sentence in this case similarly does not cross that threshold. It falls within the statutory range, and the trial court heard evidence which it could consider in assessing the defendant's culpability and the harm to the student. We hold that the sentence in this case is not grossly disproportionate under an Eighth Amendment analysis. Because Carreon's sentence was within the statutory range applicable to the offense and was not grossly disproportionate to the harm caused to the student and Carreon's degree of culpability, we hold that he has not met the threshold for a comparative review of sentencing in similar cases. Given our disposition, we do not reach the State's challenge to the reliability of the comparative data Carreon proffered during the hearing on his motion for new trial.

We hold that Carreon's punishment does not violate the Eighth Amendment on the grounds that it is a cruel and unusual punishment.

## III. Ineffective Assistance of Counsel

Finally, Carreon claims his trial counsel was ineffective because she did not: (1) call rebuttal witnesses at the PSI hearing; (2) object to the student victim's statement proffered in the PSI report; or (3) prepare Carreon for his testimony at the PSI hearing. Carreon contends that the result of the punishment proceeding would have been different if his trial counsel had investigated and presented evidence to rebut the State's case at the punishment phase.

### A. Standard of review and applicable law

When, as here, the defendant raises an ineffective assistance claim in a motion for new trial that is rejected by the trial court and reasserted on appeal, we "analyze the ineffective assistance of counsel issue as a challenge to the denial of the motion for new trial." *Starz v. State*, 309 S.W.3d 110, 118 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). We review a trial court's denial of a motion for new trial for an abuse of discretion, reversing only if the trial court's ruling was clearly erroneous and arbitrary. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013) (citing *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012)). A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Id.* We view the evidence in the light most favorable to the trial court's ruling and presume that that the trial court made all findings, express and implied, in favor of the prevailing party. *Id.*

The trial court is the sole judge of witness credibility at a hearing on a motion for new trial, whether presented through live testimony or affidavit. *Id.* We defer to a trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.*

To prevail on a claim of ineffective assistance of counsel, the defendant must prove that (1) trial counsel made errors so serious that he was not functioning as counsel under the Constitution and (2) a reasonable probability exists that, but for trial counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). The defendant bears the burden of proof on both issues, and failure to make either showing by a preponderance of the evidence will defeat his ineffectiveness claims. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

■ We begin by presuming that trial counsel performed within professional norms. *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). We do not assume that counsel lacked a sound reason for making the choices she did; on the contrary, the defendant bears the burden to demonstrate that no plausible reason exists for a particular act or omission. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

■ An attorney representing a criminal defendant has a duty to make an independent investigation of the facts in the case. *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996). This includes conducting a legal and factual investigation, along with seeking out and interviewing potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). In considering whether trial counsel conducted an adequate investigation for potential mitigation evidence, a court focuses on whether the investigation supporting counsel's decision not to introduce mitigation evidence was reasonable. *Wiggins v. Smith*, 539 U.S. 510, 522–23, 123 S.Ct. 2527, 2536, 156 L.Ed.2d 471 (2003). An attorney's decision not to investigate or to limit the scope of the investigation receives a "heavy measure of deference" and is assessed in light of all the circumstances to determine whether reasonable professional judgment would support the decision. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.

■ To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection had trial counsel objected. *See Vaughn v. State*, 931 S.W.2d 564, 566-67 (Tex. Crim. App. 1996); *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

**B. Carreon has not demonstrated ineffective assistance of counsel.**

Carreon first claims that his trial counsel performed deficiently because counsel: (1) did not call rebuttal witnesses at the punishment phase to demonstrate that the student's statements in the PSI report were not credible; (2) failed to object to the student's handwritten statement proffered in the PSI report admitted into evidence; and (3) failed to adequately prepare Carreon to testify.

**1. Additional witnesses**

■ In her affidavit accompanying the motion for new trial, trial counsel averred, "It is my belief that had I interviewed and investigated more comprehensively that the result for [Carreon] would've been better." She noted that further investigation would have led her to call more witnesses, but later testified at the hearing that she chose certain witnesses to appear based on their relationships with Carreon.

Trial counsel obtained and provided to the pre-sentence investigator written statements in support of Carreon, including statements from family members,

longtime friends, and a former employer. Carreon's common-law wife, who had separated from him, submitted a statement in support. These statements, which were included in the PSI report, spoke of Carreon's good character, his strong work ethic, his remorse, and the likelihood of his rehabilitation. During the punishment phase, defense counsel elicited the testimony of Carreon, his brother, his uncle, and a friend who has known Carreon since high school. All testified that Carreon was the kind of person who liked to help younger people realize their potential and generally help others, and that he would be a good candidate for community supervision.

At the hearing on the motion for new trial, trial counsel explained that she had not taken statements from either the student or her father, having made a tactical decision to focus on mitigation and proffer witnesses who could testify positively about Carreon's character. Trial counsel and her client were in the best position to assess which witnesses would best support his case for mitigating circumstances. The record shows that trial counsel cross-examined the father on the degree to which the student had suffered as a result of Carreon's offense. During this cross-examination, the father admitted that the student was accepted into college and had attended the school prom, which demonstrated a degree of normalcy in her life. This approach shows a tactical decision to contest the victim impact evidence presented in the student's PSI statement through the father's testimony.

Carreon argues that trial counsel failed in calling the student and other members of the soccer team to testify to further rebut the student's statements regarding the emotional harm he caused her and to support his testimony that the sexual conduct was not coerced. But trial counsel acknowledged that calling the student would expose Carreon to the risk of having the trial court hear further testimony concerning the details of Carreon's criminal conduct, testimony which Carreon avoided by entering a guilty plea. Calling other students presented a similar risk and could further demonstrate the degree to which the student was publicly humiliated, ostracized, and blamed for having engaged in the conduct. Because these strategic decisions merit deference, we hold that trial counsel's actions do not meet the first prong required under *Strickland*.

 Given that the trial judge who assessed the punishment also heard the motion for new trial, calling more witnesses to testify likely would not have changed the outcome. When the trial judge presiding over a motion for new trial also presides over the trial itself, we presume that the judge knew how evidence accompanying the motion for new trial would have affected the punishment ruling. *See Smith v. State*, 286 S.W.3d 333, 344–45 (Tex. Crim. App. 2009). The trial court in this case denied the motion for new trial after taking evidence from a number of witnesses as to Carreon's character. The trial court heard from witnesses who testified favorably as to Carreon's character and from another soccer team member and her mother and nevertheless reaffirmed the fifteen-year sentence by denying the motion for new trial. Carreon has not shown that any additional witness would have changed the outcome of the case. We hold that Carreon has failed to satisfy his burden to demonstrate that trial counsel was ineffective in failing to call additional witnesses.

## 2. Failure to object to the PSI report.

 Carreon next complains that trial counsel was ineffective because she did not object to the victim impact statement included as an addendum to the PSI

report. This complaint fails because Carreon cannot demonstrate that the trial court would have committed harmful error in overruling the objection had trial counsel objected. The Rules of Evidence do not govern the punishment phase of a criminal trial; rather, a trial court may consider any evidence relevant to sentencing including the contents of a PSI report. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (West Supp. 2016); *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004); *Jagaroo v. State*, 180 S.W.3d 793, 799 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

 The pre-sentencing investigation statute requires, before a trial court imposes a sentence, that the judge direct a supervision officer to report to the judge in writing on the circumstances of the offense with which the defendant is charged, the amount of restitution necessary to adequately compensate a victim of the offense, the defendant's criminal and social history, and any other information relating to the defendant or the offense requested by the judge. *See* TEX. CODE CRIM. PROC. ANN. arts. 42A.252, 42A.253 (West Supp. 2016); *Stringer v. State*, 309 S.W.3d 42, 45 (Tex. Crim. App. 2010). "[N]othing in the text of article 42.03 suggests it was intended to prohibit the consideration of victim impact evidence in punishment." *Jagaroo*, 180 S.W.3d at 799.

In addressing a similar issue, the Fort Worth Court of Appeals found that the victim impact statement attached to the PSI in that case was "not generated under the victim-impact statute but instead was obtained under the PSI statute." *Herrera v. State*, No. 02-14-00431-CR, 2016 WL 2766489, at *3 (Tex. App.—Fort Worth Apr. 14, 2016, pet. ref'd) (mem. op., not designated for publication). Similarly, the victim impact statement in this case was provided for the PSI, and was thus not objectionable.

### 3. Failure to prepare Carreon to testify

 Carreon next contends that trial counsel was ineffective because counsel did not adequately prepare him to testify. Trial counsel, however, does not address this issue in her affidavit, and it does not appear elsewhere in the record. Any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Because the record does not support Carreon's claim that counsel's preparation of him was deficient, his claim lacks merit. *Darkins v. State*, 430 S.W.3d 559, 571 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (defendant's ineffectiveness claim based on counsel's failure to prepare defendant to testify was not supported by the record).

 Further, to prevail on a claim of ineffective assistance of counsel for failing to adequately prepare the client to testify, a movant must demonstrate that the alleged error caused the client prejudice; in other words, that better preparation would have benefitted the client and led to a better result. *Shamim v. State*, 443 S.W.3d 316, 324 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Even assuming counsel's preparation of Carreon was deficient, he has not shown that better preparation would have benefitted him and led to a better result. Accordingly, we hold that Carreon has not demonstrated trial counsel's ineffectiveness on this basis.

On this record, the trial court reasonably could have concluded that Carreon

did not meet his burden to overcome the presumption that trial counsel's conduct fell within the range of reasonable professional assistance. As a result, we hold that the trial court did not err in denying Carreon's motion for new trial based on his ineffective assistance of counsel claim.

## CONCLUSION

We affirm the judgment of the trial court.