

# NUMBER 13-22-00502-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**RONALD DEE WALLER,**                                                                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                           **Appellee.**

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña**
**Memorandum Opinion by Justice Peña**

A trial court sentenced appellant Ronald Dee Waller to five years' imprisonment after he pleaded guilty to the offense of driving while intoxicated (DWI), third or more, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b). By one issue, Waller contends that his sentence was grossly disproportionate to his crime, thereby violating

his Eighth Amendment right to be free from cruel and unusual punishment. We affirm as modified.

## I. BACKGROUND

A Victoria County grand jury charged Waller with DWI, third offense or more, on December 17, 2020. *See id.* The trial court called the case on September 29, 2022. In court, Waller freely and voluntarily waived his right to a jury trial and pleaded guilty to the charge. In addition to accepting Waller's statements as evidence of his voluntary plea, the trial court admitted Waller's signed plea memorandum, which included written plea admonishments and a waiver of rights. Waller's counsel then stated on the record that Waller was competent to stand trial and he understood the rights he was giving up by signing the plea memorandum. The trial court then proceeded with the punishment phase.

During opening statement, Waller's counsel announced that he would call Waller and his wife, Janet, to testify. Counsel also proclaimed that "[a]t the end of the testimony[,] I anticipate that we will be requesting that the Court grant probation to [Waller]." The parties stipulated to the admission of State's exhibits 1 through 8. The State also agreed to stipulate that Waller had a secure continuous transdermal alcohol monitoring (SCRAM) device attached to his person, and that the device had not registered any alcohol use since its installment.

### A. Witness Testimony

Janet testified that she was seventy-seven years old and had been married to Waller for fifty years. She recalled that, on May 25, 2020, she was released from the hospital after surgery. That evening, she dropped off her prescription for pain medication

at her local H-E-B pharmacy before they closed. The next morning, Janet woke up in pain. Because she was under doctor's orders not to drive, she called her daughter and neighbor to see if they could pick up her prescription. Unable to reach them, she asked Waller to pick up her medication even though she knew he had been drinking the night before.

Approximately an hour and a half later, Waller had not returned to the home with Janet's medication. Janet went outside to look for her husband and saw that Waller had fallen on the concrete driveway in front of their vehicle. His face was bleeding. At that moment, she saw two police vehicles. Janet ran down her driveway to flag the vehicles down. A police vehicle pulled into her driveway, and an officer exited and helped roll Waller over to sit against a tire. Officers observed "fresh yellow scrape marks on the driver's side" of Waller's vehicle, a cool but not warm "unopen Michelob Ultra can in the center console," and an "empty Spec's [L]iquor [S]tore bag in the back[]seat" in plain view. A review of the police report showed that officers were in the neighborhood because a 911 call had reported that a driver was "swerving in and out of lanes" and eventually parked at the Waller residence.

Waller testified that he was a seventy-seven-year-old retired U.S. Navy veteran. Regarding his health, he testified that he had knee replacements in or about 1996, and back surgery sometime between 2015 and 2016. His mobility and use of hands were limited, and he had trouble keeping his balance.

With respect to his history of DWIs, Waller admitted to several prior convictions. The record showed that Waller had an extensive DWI criminal conviction history: (1) a

3

1992 misdemeanor conviction from Nueces County (Cause No. 92-6593-2); (2) a 1994 misdemeanor conviction from Nueces County (Cause No. 94-2565-4); (3) a 1999 misdemeanor conviction from Aransas County (Cause No. 17321); (4) a 2005 felony conviction from San Patricio County (Cause No. S-05-3113CR); (5) a 2006 misdemeanor conviction from Nueces County (Cause No. 05-CR-2990-H); and (6) a 2011 felony conviction from Victoria County (Cause No. 10-10-25504-D), for which he served prison time. Waller testified that when he was imprisoned for his last DWI, he was confined to a bottom bunk due to his poor health and limited mobility.

Waller recalled that, on the day of arrest in the underlying case, he knew his level of intoxication "was borderline [over the legal limit], but [he] wasn't sure." He stated that he would not have driven but for his wife's need for her pain medication. Waller's blood test results revealed that his blood alcohol concentration was .220. Since the day of his arrest, however, Waller proclaimed that he had not consumed any alcohol. He further alleged that he did not intend to drink in the future.

## B.    Closing and Ruling

At closing, Waller's counsel argued for lenience: "He's [seventy-seven] years old. He's physically impaired in many ways. I don't know how much time is left, and we're requesting that the [c]ourt place [Waller] on probation." The State, however, argued otherwise: "I can sympathize for the situation that's going on; but unfortunately, due to the safety of the community, I cannot recommend probation for him. And I ask that he be sentenced to prison."

The trial court took judicial notice of the case file, as well as the case file for Cause

4

No. 10-10-25504-D from Victoria County—the DWI conviction for which Waller previously served prison time. The trial court then sentenced Waller to five years' in the Texas Department of Criminal Justice Correctional Institutions Division and ordered him to pay costs. Waller did not object to the sentence at the time of pronouncement, nor did he file a motion for new trial arguing that his sentence was cruel and unusual. Waller now appeals.

## II.    STANDARD OF REVIEW & APPLICABLE LAW

A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (quoting *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009)). In general, to preserve a complaint that a sentence constitutes cruel and unusual punishment for appellate review, a defendant must first have presented to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a); *see Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *see also Navarro v. State*, 588 S.W.3d 689, 690 (Tex. App.—Texarkana 2019, no pet.) (holding that a defendant must make a timely, specific objection in the trial court or raise the issue in a motion for new trial to preserve a disproportionate sentencing complaint); *Toledo v. State*, 519 S.W.3d 273, 284 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

The Eighth Amendment to the Constitution of the United States provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. This provision was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *See id.* amend. XIV;

5

*Robinson v. California*, 370 U.S. 660, 666–67 (1962). Generally, punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual offender statute, is not excessive, cruel, or unusual. *See Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006).

A sentence that is within the applicable range of punishment may nevertheless be cruel or unusual in the "exceedingly rare" or "extreme" case in which the sentence is grossly disproportionate to the offense. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). To determine whether a sentence for a term of years is grossly disproportionate, a court "must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016) (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). "In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (citing *Graham*, 560 U.S. at 60). "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.* (citing *Graham*, 560 U.S. at 60).

### III.    ANALYSIS

As a threshold issue, the State contends that Waller did not preserve the issue of his punishment on appeal. *See* TEX. R. APP. P. 33.1. It contends that Waller did not object to the sentence at the time it was pronounced, nor did Waller file a motion for new trial

specifically stating his objection. Waller, in response, argues that he requested probation throughout the trial, specifically during his opening and closing statements. During opening, Waller's counsel stated, "we will be requesting that the Court grant probation to [Waller]." And during closing, counsel emphasized Waller's advanced age and physical impairments in asking for community supervision: "I don't know how much time is left, and we're requesting that the [c]ourt place [Waller] on probation."

Waller, in his brief, contends that these arguments let the trial judge know what he wanted, why he thought he was entitled to it, and that he did so "clearly enough for the judge to understand him at a time when the judge [was] in the proper position to do something about it." *See Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018) (quoting *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012)). We disagree. Although "no 'hyper-technical or formalistic use of words or phrases'" are necessary to preserve error, opening and closing statements are typically a time for attorney argument only. *See id.* And, while Waller's attorney requested probation, he never complained to the trial court that the sentence actually imposed was cruel or unusual or disproportionate. To preserve his issue for appeal, Waller should have objected to his sentence on the basis that it violated the Eighth Amendment when it was pronounced or in a motion for new trial. *See* TEX. R. APP. P. 33.1; *see also Wyre v. State*, No. 01-13-00414-CR, 2014 WL 4345199, at *2 (Tex. App.—Houston [1st Dist.] Aug. 29, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that appellant did not preserve punishment issue for appeal when it requested community supervision during trial, not at sentencing); *Garcia v. State*, No. 13-00-683-CR, 2002 WL 34214218, at *1 (Tex. App.—Corpus

7

Christi–Edinburg Aug. 22, 2002, no pet.) (mem. op., not designated for publication) (same).

Assuming, however, that Waller's sporadic requests for probation did preserve the punishment issue, we hold the trial court did not abuse its discretion in sentencing him to five years in prison. Waller's offense, a DWI, third or more, is a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b). The range of punishment for a third-degree felony is "any term of not more than 10 years or less than 2 years." *Id.* § 12.34. Generally, a punishment assessed within the statutory limits is not cruel or unusual. *See Ex parte Chavez*, 213 S.W.3d at 323–24.

Waller nevertheless argues the punishment is grossly disproportionate because, among other factors, there were no victims or accident in this case; Waller is in poor health and long-term incarceration will present difficult challenges; and the SCRAM device has shown that Waller has not consumed alcohol since the day the device was attached to his person.

Although we are cognizant of Waller's age and underlying health issues, the evidence reflects that this is Waller's *seventh* DWI conviction. Waller's blood alcohol concentration was nearly three times the legal limit, and he was arrested in the middle of the day. Considering the "severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses," we conclude that the sentence of five years' imprisonment is not grossly disproportionate to the crime. *See Simpson*, 488 S.W.3d at 323.

8

We overrule Waller's sole issue.

## IV.    MODIFICATION OF JUDGMENT

The judgment of conviction for driving while intoxicated states that the defendant's plea to the offense is "NOT GUILTY."   We modify the judgment to recite the correct plea for this offense: GUILTY. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (noting that appellate courts have the power to modify a judgment to speak the truth when we are presented with the necessary information to do so).

## IV.    CONCLUSION

We affirm the trial court's judgment as modified.

L. ARON PEÑA JR.
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
20th day of April, 2023.

9