

# NUMBER 13-22-00623-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**OMAR JESUS GARZA,**                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

### On appeal from the 105th District Court
### of Kleberg County, Texas.

# MEMORANDUM OPINION

### Before Justices Tijerina, Silva, and Peña
### Memorandum Opinion by Justice Silva

Appellant Omar Jesus Garza pleaded guilty to criminal mischief of more than $2,500 but less than $30,000 and evading arrest with a vehicle, *see* TEX. PENAL CODE ANN. §§ 28.03, 38.04, offenses enhanced to third-degree and second-degree felonies, respectively, by appellant's prior criminal history. *See id.* §§ 12.42(a), 12.425(a).

Appellant was placed on deferred community supervision, which the trial court subsequently revoked and thereafter adjudicated appellant. By a single issue, appellant argues that his sentences of ten- and twenty-years' incarceration constitute cruel and unusual punishment. We affirm.

## I.    BACKGROUND

On January 19, 2022, appellant entered into a plea bargain agreement and pleaded guilty to felony criminal mischief and evading arrest with a vehicle, offenses alleged to have occurred in the early morning hours of September 25, 2019. As part of the plea bargain agreement, appellant was prohibited from communicating with the complainant, Lynn Garza, or her family. Appellant further stipulated to the veracity of the following evidence:

On September 25, 2019, Kleberg County Sheriff's Office Deputy Jonathan Jimenez received a dispatch notice that appellant, driving an older black model Nissan sedan, was in route to harm Lynn. Deputy Jimenez observed a vehicle matching the description and confirmed the vehicle was registered to Lynn. Jimenez thereafter activated his emergency lights on his marked patrol unit and attempted to initiate a traffic stop. Appellant refused to pull over and accelerated his vehicle once nearing a residence later determined to belong to Lynn's mother. Deputy Jimenez witnessed appellant collide into a parked vehicle in the driveway, which sustained an estimated $4,604.97 of damage.

Deputy Jimenez then instructed appellant to exit his vehicle. In response, appellant remained in his vehicle and pulled out a "large knife." Deputy Jimenez approached appellant's vehicle with his weapon drawn and instructed appellant to drop the knife.

2

Appellant initially refused and began yelling, "I want you to f[-]cking kill me! F[-]cking kill me!" Appellant then exited the vehicle and began taking steps towards Deputy Jimenez, while stating, "[K]ill me mother f[-]cker[;] kill me. . . . Let's do suicide by cop mother f[-]cker." After Deputy Jimenez declined to engage and attempted to de-escalate the situation, appellant retreated to his vehicle, telling Deputy Jimenez, "Y'all are lucky I couldn't find a gun. I was going to bring a shotgun[,] but my homeboy didn't let me have it."

Unprovoked, appellant later told Deputy Jimenez he had refused to pull over his vehicle "on purpose bro," to make Deputy Jimenez "chase" him. Appellant also confessed he had not come over to the residence to talk to Lynn, stating, "F[-]ck no[.] I came to f[-]ck this b[-]tch up."

Appellant also stipulated to the contents of a signed emergency protective order and affidavit written by Lynn, wherein Lynn stated that earlier that same day, appellant had followed her to work, and he had called her threatening to send her coworkers personal pictures he had taken of her unknowingly. Appellant later informed Lynn that he was waiting for her at her apartment and sent her photographs depicting her broken dresser mirror and her destroyed clothing. According to Lynn, when she returned to her apartment after the incident at her mother's residence, she found that appellant had "sliced [her] sofas with a knife," broken the television, "dumped everything" out of the cabinets in the kitchen, and left her bedroom a "disaster." The only rooms untouched in her apartment belonged to their two daughters.

On March 24, 2022, less than four months after being placed on community supervision, the State filed a motion to revoke and adjudicate guilt in both causes. The State filed subsequent amended motions to revoke his community supervision, and at the revocation hearing on November 29, 2022, the State proceeded on its third amended motion. The State abandoned one of twelve alleged violations, and appellant pleaded true to all the remaining allegations, which included testing positive for alcohol and communicating with Lynn or a member of her family in March 2022 via social media and via phone between October and November 2022.[1]

Appellant testified at the revocation hearing, explaining he had been in a relationship with Lynn since they were teenagers and was struggling with his mental health at the time of the September 2019 offense. On cross-examination, appellant conceded there is a three-and-a-half-year difference between them, their relationship began when Lynn was twelve years old, and they got married when Lynn was fifteen. Appellant also conceded he was arrested for the offense of injury to a child, which transpired when Lynn was in high school, and he maintained it was "the only time [he] ever put hands on her."

The trial court found the allegations to be true, revoked appellant's community supervision in both causes, and sentenced him in each cause with sentences to be served concurrently. This appeal ensued.

---

[1] Arnold Salinas, an investigator with the Kleberg County Sherriff's Office, testified appellant had made over 160 calls between October and November 2022.

### III. PUNISHMENT

By his sole issue, appellant asserts that the sentences imposed were disproportionate to the seriousness of the offense committed and amount to cruel and unusual punishment.

An allegation of excessive or disproportionate punishment is a legal claim "embodied in the Constitution's ban on cruel and unusual punishment" and based on a "narrow principle that does not require strict proportionality between the crime and the sentence." *State v. Simpson*, 488 S.W.3d 318, 322–24 (Tex. Crim. App. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); *see* U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); *see also Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010) (acknowledging that the Eighth Amendment is applicable to the states by virtue of the Fourteenth Amendment (citing *Robinson v. California*, 370 U.S. 660, 666–67 (1962))). A successful challenge to proportionality is exceedingly rare and requires a finding of "gross disproportionality." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd).

However, to preserve for appellate review a complaint that a sentence is grossly disproportionate or cruel and unusual, a defendant must present to the trial court a "timely request, objection, or motion" stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a); *see Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) ("It is well settled that almost every right, constitutional and statutory, may be waived by the

5

failure to object."); *Toledo v. State*, 519 S.W.3d 273, 284 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (concluding defendant had failed to preserve disproportionate-sentencing complaint); *see also Wade v. State*, No. 02-13-00251-CR, 2014 WL 1257387, at *1 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) (mem. op., not designated for publication) (concluding issue was unpreserved where appellant was sentenced to life imprisonment for criminal mischief); *Adams v. State*, No. 13-09-00334-CR, 2010 WL 2783745, at *8 (Tex. App.—Corpus Christi–Edinburg July 15, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding the same where appellant was sentenced to forty years' imprisonment for evading arrest, enhanced by his felony habitual offender status).

At no time prior to the appeal did appellant argue that the sentences imposed were disproportionate to the offenses charged or in violation of his constitutional rights. Accordingly, appellant failed to preserve his complaint for review. *See* TEX. R. APP. P. 33.1(a); *Trevino*, 174 S.W.3d at 927–28. Moreover, even assuming appellant did preserve error, the sentences appellant received of ten- and twenty-years' imprisonment were each within the statutory range which had been elevated due to his repeat felony offender status. *See* TEX. PENAL CODE ANN. §§ 12.42(a), 12.425(a). Sentences within the statutory range, such as appellant's, are generally not excessive, cruel, or unusual. *See Wood v. State*, 560 S.W.3d 162, 168 (Tex. Crim. App. 2018); *Trevino*, 174 S.W.3d at 928; *see also Stuckey v. State*, No. 13-19-00529-CR, 2021 WL 1045803, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 18, 2021, pet. ref'd) (mem. op., not designated for publication) (concluding appellant's sentence of thirty years' imprisonment for the offense of

possession of a controlled substance, penalty group 1, one gram or more but less than four grams enhanced by prior felony convictions is within the statutory range, and, thus, likely not excessive or cruel); *McCann v. State*, No. 02-16-00450-CR, 2017 WL 3428849, at *1 (Tex. App.—Fort Worth Aug. 10, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding appellant's sentence of twenty years' imprisonment for evading arrest, enhanced by his prior convictions, fell within the applicable range prescribed by the legislature, and is not grossly disproportionate or excessive, cruel, or unusual). We overrule appellant's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
27th day of July, 2023.

7