

## NUMBER 13-23-00414-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**NOAH LEE CLOUSE**  Appellant,

**v.**

**THE STATE OF TEXAS,**  Appellee.

---

### ON APPEAL FROM THE 36TH DISTRICT COURT
### OF ARANSAS COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Silva**
**Memorandum Opinion by Justice Longoria**

Appellant Noah Lee Clouse pleaded guilty to violating a protective order two times within twelve months.[1] *See* TEX. PENAL CODE ANN. § 25.072(e). Appellant also entered a

---

[1] The original indictment alleged that appellant had violated the terms of a protective order by contacting his wife two or more times in a twelve-month period. The indictment specified fifty-three dates

plea of true to three prior felony convictions: injury to a child, assault family violence two times, and assault family violence enhanced. Appellant was sentenced by the trial court to sixty years' incarceration. On appeal, appellant argues that his sentence is disproportionate to the seriousness of the offense. We affirm.

## I.    BACKGROUND

After appellant waived his right to a jury trial and entered his plea of guilty, the State presented evidence to the trial court. Justice of the Peace Diana McGinnis testified that she entered the emergency protective order against appellant with the protected individual being Layna Clouse, appellant's wife and the victim in appellant's assault case. Judge McGinnis stated that the emergency protective order specified that appellant was not to communicate "in any manner with Layna Clouse or a member of the family or household of [Layna] except through the party's attorney."

Criminal Investigator Kaelin Kemp of the Aransas County Sheriff's Office testified that he was assigned to appellant's assault family violence with a previous conviction case. As a result of the assault against Layna, an emergency protective order was put into place. Investigator Kemp reviewed jail calls between appellant and Layna. Recordings of eighteen calls to Layna from appellant's account and two calls from another inmate's account were admitted into evidence without objection. In one of the calls, appellant states that "[t]his is probably violating that order," indicating he was aware that he should not have been calling Layna. During the calls, appellant is heard telling Layna to get rid of the protective order and to file an affidavit of non-prosecution to have the charges against him dropped. Investigator Kemp explained that Layna had her phone

and times that appellant was alleged to have made contact. At the start of trial, the State announced that it was removing thirty-two of those dates and times and proceeding on the rest.

2

number blocked from the jail and changed her phone number but that appellant used another inmate's account to contact Layna. Investigator Kemp stated that appellant contacted Layne approximately eighty-two times in violation of the protective order.

Investigator Kemp testified that appellant had previously been convicted of injury to a child, assault on a family member, assault causing bodily injury on a family member, assault family violence, assault on a public servant, and driving while intoxicated with a child passenger. Investigator Kemp also stated that appellant pleaded guilty to assault family violence for "intentionally, knowingly[,] or recklessly caus[ing] bodily injury to Layna Clouse" by striking her with a belt.

Appellant testified that growing up, his mother was a drug addict who abandoned him and his siblings with their grandmother. He stated that his grandmother was very strict, and he was beaten daily as a child. At the age of nine he went into psychiatric care for two years. His mother took possession of him after his treatment, but she was still addicted to drugs, and he explained that he "grew up in drug houses." At the age of thirteen, he overdosed on ecstasy and methamphetamine and received rehabilitation treatment where he was "diagnosed with Bipolar I" disorder. From there, he explained that he moved to various locations on his own until age eighteen. He has held various jobs throughout his life including, among others, construction, plumbing, service processor, "reverend work," and an Uber driver.

He and Layna married in 2016. He states that he was "strung out on drugs until [he] was [thirty-two] years old," when he committed the offenses of driving while intoxicated with child passengers and assault on five public servants—four police officers and a judge. He explained that Layna supported him through his struggles. According to

3

appellant, Layna admitted to having an affair with an inmate where she was working. He said that caused them to argue a lot and have communication and relationship issues. Eventually, he decided to start using drugs again and convinced Layna to take methamphetamines with him. They both became addicted, "lost [their] kids" to the Texas Department of Family and Protective Services, and they were both in and out of rehabilitation treatment centers.

On cross-examination, appellant testified that the conviction for injury to a child was from spanking his former girlfriend's son. He also stated that one of his convictions for assault of a family member was due to a fist fight with his brother and another was for pushing a former girlfriend. He was also "attacked" by his father and he "fought back." When he got his driving while intoxicated with child passengers offense, the children were three and two years old. While he pleaded guilty and was convicted for assaulting Layna with a belt, he denied in his testimony that he ever hit her with a belt. As for the assault that was the basis of the emergency protective order, he admitted that he told officers he had "grabbed [Layna] by the shirt."

At the close of evidence, after detailing his criminal history and behavioral issues, the State sought fifty years' imprisonment for appellant. Appellant asked the trial court to "consider the lower end of the guidelines available." After a recess, the trial court accepted the guilty plea and the plea of true to the enhancements. The trial court sentenced appellant to sixty years' imprisonment. Appellant made no objection. This appeal followed.

## II. DISPROPORTIONATE SENTENCE

By his sole issue on appeal, appellant argues that the sentence is disproportionate

to the seriousness of the offense.

## A.  Standard of Review & Applicable Law

We review a court's sentencing determination for an abuse of discretion. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). Generally, if a sentence is assessed within the legislatively determined range, it will not be found unconstitutional. *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (noting that "the sentencer's discretion to impose any punishment within the prescribed range [is] essentially 'unfettered'"); *Foster v. State*, 525 S.W.3d 898, 912 (Tex. App.—Dallas 2017, pet. ref'd). An allegation of excessive or disproportionate punishment is a legal claim embodied in state and federal constitutional bans on cruel or unusual punishment and based on a "narrow principle that does not require strict proportionality between the crime and the sentence." *State v. Simpson*, 488 S.W.3d 318, 322–24 (Tex. Crim. App. 2016) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)); see U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); TEX. CONST. art. I, § 13 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted."). A successful challenge to proportionality is exceedingly rare and requires a finding of "gross disproportionality." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)); *Trevino v. State*, 174 S.W.3d 925, 928 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd).

To preserve for appellate review a complaint that a sentence is grossly disproportionate or cruel or unusual, a defendant must present to the trial court a "timely request, objection, or motion" stating the specific grounds for the ruling desired. TEX. R.

APP. P. 33.1(a); *see Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) ("It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object."); *Toledo v. State*, 519 S.W.3d 273, 284 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (concluding defendant had failed to preserve disproportionate-sentencing complaint); *see also Adams v. State*, No. 13-09-00334-CR, 2010 WL 2783745, at *8 (Tex. App.—Corpus Christi–Edinburg July 15, 2010, pet. ref'd) (mem. op., not designated for publication) (concluding the same where appellant was sentenced to forty years' imprisonment for evading arrest, enhanced by his felony habitual offender status). "To state the obvious, an unpreserved grossly disproportionate sentencing argument cannot conceivably persuade this Court and is thus frivolous." *Trevino v. State*, 676 S.W.3d 726, 732–33 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.).

Appellant did not object to the sentence when pronounced nor did he argue that the sentence imposed was disproportionate to the offense charged or in violation of his constitutional rights prior to this appeal. Accordingly, appellant failed to preserve his complaint for review. *See* TEX. R. APP. P. 33.1(a); *Trevino*, 174 S.W.3d at 927–28. We overrule appellant's sole issue.

### III.    CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
8th day of August, 2024.