Opinion issued August 4, 2022



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-21-00409-CR

_____

### GIANNA MARIE BEDNARSKI, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 412th Judicial District Court
Brazoria County, Texas
Trial Court Case No. 87168-CR

## MEMORANDUM OPINION

Gianna Marie Bednarski pled guilty to five separate counts of having an improper relationship between an educator and a student, arising out of a sexual relationship she had with her 15-year-old student. On appeal, she contends that her trial attorney provided ineffective assistance of counsel because he incorrectly

advised her that any sentences imposed for these five offenses could be stacked at the discretion of the trial court when the law mandated that sentences for this offense run concurrently.

Because Bednarski has not demonstrated prejudice from the claimed ineffective assistance of counsel, we affirm.

## Background

Gianna Marie Bednarski was a high school English teacher in Brazosport ISD. She was alleged to have had a month-long sexual relationship with a 15-year-old student in her English II class. The relationship began in November 2018 and ended when school and law enforcement officials learned of it in early January 2019. Bednarski was charged with five counts of the felony offense of having an improper relationship between an educator and a student.

The criminal trial took place in June 2021. Just before voir dire began, there was a short discussion on the record about the State's plea offer. The State had made the same offer for each of the five counts: a 10-year prison sentence probated for 10 years, conditioned on 180 days of jail, plus some form of prohibition on future employment as a teacher. During those discussions, Bednarski's trial attorney advised her, on the record, that the sentences for the five counts could be stacked, at the discretion of the trial court, if she were found guilty. Counsel's

2

misstatement was not corrected on the record during those discussions.[1] At the end of the discussion, Bednarski informed the trial court that she would plead not guilty on all five counts and would proceed to jury trial on guilt-innocence and, if necessary, punishment.

Voir dire followed. During voir dire, Bednarski's trial attorney made multiple statements to the jury indicating that Bednarski potentially could be sentenced to longer than 20 years, even though each offense had a maximum sentence of 20 years. One venire member asked a clarifying question about how the sentences might run, and the trial court declined to answer the question, telling the venire member, "Those are probably questions that we cannot address at this time." The day concluded with the jury being empaneled.

The presentation of evidence began the next day. David, the complainant, was the State's first witness. He testified in detail about Bednarski's approaching him during after-school tutorials and passing him a note that she liked how he danced. She wrote something to the effect of it "turned her on." The jury received evidence of solicitous notes and poems Bednarski sent to David. David testified that her advances quickly led to a sexual encounter in the back corner of her

---

[1] Bednarski did not submit at affidavit in connection with her claim of ineffective assistance of counsel; therefore, there is no evidence of when Bednarski first learned that punishment for the alleged crimes could not be stacked.

classroom. Several more sexual encounters followed, in her classroom and in her car.

The jury was shown phone records that revealed multiple calls per day Bednarski made to David over a one-month period. The jury was shown sexually explicit photos Bednarski had sent David around the time of their encounters. David confirmed he received the photos from Bednarski. The jury also was shown still images from a video Bednarski had sent to David of her engaging in sexual conduct alone. The evidence established that these images were obtained from Bednarski's phone during the police investigation. David testified he received the video and described its content. David was the only witness that day.

The next day began with brief testimony from M. O'Connor with the Brazoria County Alliance for Children. She testified that she conducted a forensic interview of David but that he did not disclose any sexual abuse during their meeting. She agreed that people sometimes refuse to disclose sexual abuse.

Next, the State announced it was calling its third witness, R. Totten. Bednarski knew Totten. They were both English teachers in the high school, and Totten was the person who alerted school officials about suspicions that Bednarski was engaging in inappropriate conduct with students. The trial court gave the jury a short break before Totten testified. When the break ended, Bednarski's attorney announced that Bednarski was changing her plea on all counts to guilty.

Bednarski pled guilty on all counts, the trial court formally received the verdict of guilty on all counts, and trial advanced to the punishment phase.

Totten was the State's only punishment witness. She testified that Bednarski started teaching at the high school in August 2018. At first, Bednarski appeared very "proper," "timid," and "sweet." By the end of the first semester, though, she was wearing her hair differently, dressing differently, and seen spending time alone with students in her classroom when the students were supposed to be in other areas of the school.

Totten testified that she saw Bednarski acting possessively toward students and giving some female students "looks" if they talked to certain male students. This was not appropriate behavior for a teacher. During one Saturday STAAR test-preparation session, Totten saw Bednarski "front hug" a male student, which was strictly prohibited under school policy. Totten developed a "sinking feeling" that something was not right. She reported it to the assistant principal who supervised the English department.

Later, Totten was told that Bednarski would not be returning to campus and that Totten needed to clean out Bednarski's classroom. There, Totten found some of Bednarski's writings, which she described as "just inappropriate" and "sexually based." She also found a note with David's phone number written on it and a second note with another male student's work schedule listed.

Totten described trying to teach Bednarski's classes in addition to her own. She said it was "devastating" to try to effectively teach 250 kids on her own because Bednarski was no longer there to teach her classes. She concluded by saying that she felt as though she had "let the kids down like it was [her] fault" that their learning suffered because of these events.

The State rested after Totten testified. The defense began its presentation with Bednarski's testimony. Bednarski was asked right away what made her change her pleas to guilty. She answered:

> Honestly, I went home after listening to [David]'s testimony and I really started to think and pray about everything that I heard, the emotions that he expressed on the stand talking about what had happened; and I realize how much damage emotionally I caused him, which I can never take back. When I went into teaching that is not what I wanted to do. So I felt so much remorse and regret that I started to ask myself how can I change the outcome? How can I make this better? How can I make this right? And so this morning I approached my lawyers and asked them what I could do, if I can change my plea at this point in time, if I could make amends and be accountable for the devastation I caused to him for what I did.

Bednarski told the jury that she sought "mercy" because she came to realize the harm she had caused and because she wanted to be there for her two young daughters as they grew up.

On cross-examination, the prosecutor probed whether Bednarski had changed her plea because of the force of the evidence against her versus any sense

6

of remorse. Bednarski confirmed that she had changed her pleas to account for the harm she caused David and to "atone" for her sins.

The prosecutor asked Bednarski to tell the jury what happened with David. She testified that David was the one who initiated their physical relationship. After tutorials, he returned to her classroom uninvited and gave her a note that said he wished he were her husband. He then "grabbed" her hand and "pulled" her to the corner of her classroom, where he kissed her. She said that he initiated every sexual encounter they had. When they had sex, it was because he pursued her. When she sent him naked photos and sexually explicit videos, it was because he asked for them. She testified that, to the extent David indicated that she initiated anything, he was not telling the truth. But she agreed that the phone records in evidence establish that she initiated almost all phone calls and text messages between the two.

Bednarski's testimony continued into the next day of trial. Before she took the stand again, the trial court discussed the court's charge with the attorneys. The record reflects that Bednarski was present for that discussion. The trial court noted that Bednarski's attorney had stated in voir dire that the sentences for the five counts could be stacked. The trial court stated that the law does not allow stacking on these offenses and indicated an interest in correcting the jury's understanding of the law. Bednarski's attorney objected to informing the jury that the sentences

were not subject to stacking but noted that, ultimately, it was the trial court's decision. The discussion concluded, and the jury was brought in to resume trial.

Bednarski's testimony continued. She said that David was remembering events from his perspective but that her version was the truth. She told the jury that David had initiated all sexual contact between the two. Bednarski was asked again why she pleaded guilty. She said:

> Because I looked at him. The brief moments that I looked up I could see really and truly how much pain I had caused and how much pain that I caused not only him but myself. And I mean it's hard for many of you to believe, but I didn't think about it. I tried very, very hard not to think about it for the last two and a half years about possibly causing a young gentleman immense pain, something that I can't change or redo or go back in time. All I can do is atone and try to ask for forgiveness, not only from the folks that are standing here but from his mom and from himself as well.

The defense's only other witness was S. Duke, a Brazoria County community Supervision and Corrections Department supervisor. He explained how community supervision works, described the types of conditions that might be placed on a person under community supervision, and informed the jury of the steps his department takes to confirm compliance with community-supervision conditions. On cross-examination, he agreed that not every violation is discovered. After his testimony, the defense rested.

Next, the trial court read the court's charge to the jury. After reading the charge, the trial court added this statement:

> All right. One more thing before we start closing arguments. During voir dire it was mentioned that if we got to this point in this case that the sentences could be stacked. I think the term was used there was a certain number of years. The law is any punishment assessed for this offense actually runs concurrently, which means at the same time. Okay? This is not a consecutive stacked sentence case. The law does not provide for that. Okay? So any punishment assessed will run concurrently, at the same time. Okay?

Then, both sides gave closing arguments. The prosecutor reiterated that the sentences were not subject to stacking and that, if the jury sentenced her to 20 years on each offense, the total amount of the sentence would still be 20 years.

The jury returned its punishment verdict, sentencing Bednarski to 20 years' confinement for each of the five counts of inappropriate relationship between an educator and a student, which is the maximum sentence allowed by law.

**Ineffective Assistance of Counsel**

Before voir dire, during discussions on the State's plea offer, Bednarski's attorney told her that punishment for multiple counts could be stacked at the trial court's discretion. Bednarski then refused the State's plea offers and elected to proceed to trial. Midway through trial, after David had testified against her and the sexually explicit materials from her phone were shown to the jury, Bednarski changed her pleas to guilty and proceeded to the punishment phase of trial.

9

Bednarski now contends on direct appeal that her attorney provided her ineffective assistance of counsel. She asserts that the misadvice on stacking punishments was deficient performance. And she asserts that it is "obvious from the record that this incorrect advice of potential stacking of the counts played some role which caused her to change her pleas to guilty" midtrial.

## A.     Standard of review

In reviewing a claim of ineffective assistance of counsel, we apply the United States Supreme Court's two-prong test from *Strickland v. Washington*, 466 U.S. 668 (1984), that looks at whether the attorney's performance was deficient and whether that deficient performance harmed the defendant. Under the first *Strickland* prong, any judicial review of whether counsel's performance was deficient must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We begin by presuming that trial counsel performed within professional norms. *Id.* We do not assume that counsel lacked a sound reason for making the choices he did; on the contrary, the defendant must demonstrate that no plausible reason exists for a particular act or omission. *Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002); *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.— Houston [1st Dist.] 2017, pet. ref'd). When the record is silent as to trial counsel's strategy, we will not conclude that the defendant received ineffective assistance

unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone*, 77 S.W.3d at 833. In the majority of cases, the defendant is unable to meet the first prong of the *Strickland* test because the record is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

Usually under the second *Strickland* prong, a defendant must show that there is a reasonable probability that but for his counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. But when counsel's deficient performance might have caused the waiver of a proceeding, the defendant's burden is to demonstrate a reasonable probability that the deficient performance caused the defendant to waive a judicial proceeding that he was otherwise entitled to have. *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). The focus is on the defendant's decision-making. *Id.* When a defendant argues that his counsel did not properly advise him before he pleaded guilty, the defendant must show a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

11

*Id.* (citing *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017)). While the "different outcome" standard under *Strickland* is relevant to the extent it sheds light on whether the deficient performance really did affect the defendant's decision-making, it is not the measure of prejudice. *Miller*, 548 S.W.3d at 500.

A reasonable probability is probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

## B. Analysis

Even assuming that Bednarski can establish that her trial attorney's misstatement of law constitutes deficient performance, we conclude that she has failed to establish prejudice to obtain a reversal.

Bednarski's prejudice argument is not that the pretrial misadvice during plea discussions caused her to reject the plea offer. It is that it caused her, two days later, to waive her right to have the jury determine guilt and, instead, to plead guilty. Bednarski cannot meet her burden to establish prejudice for two reasons.

First, there is no evidence in the record to support her contention that the misadvice had any causal link to her changing her pleas. From the record, we know that, on June 28, Bednarski's attorney told her that punishments could be stacked at the trial court's discretion. Minutes later, she rejected the State's plea offers and

12

entered pleas of not guilty. The next day, on June 29, David testified for several hours. On the third day, June 30, the State presented the forensic interviewer and then announced it was calling Bednarski's coworker, Totten, to testify. Before Totten began her testimony, the jury was given a quick break. At that point, during the jury's mid-day break on June 30, Bednarski changed her pleas. Nothing in the timing of these events suggests that the June 28 misadvice caused Bednarski to change her pleas two days later.

Bednarski did not move for a new trial after her conviction; therefore, the evidence that would typically be presented in support of a claim of ineffective assistance of counsel is not in the record before us. *See Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (noting that a hearing on a motion for new trial or an application for a writ of habeas corpus offer best opportunities to develop record for a claim of ineffective assistance of counsel). There is no affidavit or hearing testimony from Bednarski's trial attorney about the decision to change the pleas to guilty. Nor do we have an affidavit or hearing testimony from Bednarski that explains what she understood at key points in the proceeding, what caused her to make the plea choices she made, when she first understood that the sentences could not be stacked, or how that date relates to the timing of her changing her pleas to guilty. We are limited to the assertions in her

appellate brief that her trial attorney's misstatements of law had some connection to her later changing her pleas to guilty.

Assertions of fact in an appellate brief that are not supported by the record, though, do not constitute evidence that may be considered on appeal. *McDonald v. State,* 64 S.W.3d 86, 89 (Tex. App.—Austin 2001, no pet.); *see Rian v. State*, No. 03-07-00599-CR, 2009 WL 2476607, at *10 (Tex. App.—Austin Aug. 11, 2009, pet. ref'd) (mem. op., not designated for publication) (noting that assertions in appellate brief are not evidence to support claim of ineffective assistance of counsel).

Without a developed record with affidavits or testimony from Bednarski or her trial attorney, there is no evidence to support the contention that the misadvice caused her to change her pleas to guilty. The record before us is simply inadequate to determine the effect that counsel's advice had on Bednarski's decision to change her pleas two days later. Because the record does not show a reasonable probability that the attorney's mistake about stacking sentences caused Bednarski to waive the jury's determination of guilt and enter pleas of guilty, her claim of ineffective assistance of counsel must fail for lack of prejudice. *Swinney v. State*, No. PD-0216-21, — S.W.3d —, 2022 WL 610977, at *4 (Tex. Crim. App. Mar. 2, 2022) (designated to be a published opinion, though still subject to revision or withdrawal as of this date) (stating that, because record said nothing about impact misadvice

14

had on defendant's trial choices, reliance was not established and ineffective-assistance claim failed for lack of prejudice).

Second, to the extent the record speaks on the topic at all, it supports a conclusion that Bednarski changed her plea because she was moved by the force of David's testimony against her. Bednarski was asked twice while testifying in the punishment phase of trial why she changed her pleas to guilty. Both times she said it was because she listened to David's testimony, realized the harm she had caused him, and wanted to "make amends and be accountable for the devastation [she] caused to him for what [she] did." She did not mention the possibility of stacked sentences or any subsequent revelation that the sentences could not be stacked. She did not mention length of sentence at all: she asked for community supervision.

The record does not support the assertion in Bednarski's appellate brief that she changed her pleas because of counsel's advice concerning the trial court's ability to stack sentences. Instead, it indicates that other factors played a predominate role in her decision. *See id.* Without record evidence to support her contention, she does not meet her burden to establish prejudice.

We overrule Bednarski's sole issue.

15

## Conclusion

We affirm.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Guerra, and Farris.

Do not publish.  TEX. R. APP. P. 47.2(b).