**Opinion issued November 26, 2024**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-23-00819-CR

———————————

**JILLIAN BESS JINKINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 149th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 97761-CR**

## MEMORANDUM OPINION

Jillian Bess Jinkins pleaded guilty to the state-jail felony offense of possession of less than one gram of a controlled substance, methamphetamine, punished as a third-degree felony because Jinkins stipulated that she has two prior state-jail felony

convictions.[1] Following an agreement between Jinkins and the State, the trial court assessed Jinkins' punishment at eight years' confinement, suspended the sentence, and placed her on community supervision for three years. The State subsequently moved to revoke Jinkins' community supervision, alleging that she had violated two community supervision conditions. After an evidentiary hearing, the trial court found the allegations true and revoked Jinkins' community supervision. The court assessed Jinkins' punishment at six years' confinement.

In two issues on appeal, Jinkins argues that (1) the State failed to present sufficient evidence to support the revocation of her community supervision; and (2) the six-year sentence imposed by the trial court was excessive and disproportionate to the underlying offense. We modify the judgment of the trial court and affirm as modified.

## Background

On February 3, 2023, a Freeport Police Department officer arrested Jinkins for criminally trespassing at a convenience store. While officers processed Jinkins at the jail, she informed them that she had a syringe and a bag containing less than

---

[1] *See* TEX. HEALTH & SAFETY CODE §§ 481.102(6) (listing methamphetamine as controlled substance in penalty group 1), 481.115(a)–(b) (providing that possession of less than one gram of substance in penalty group 1 is state jail felony); TEX. PENAL CODE §§ 12.425(a) (providing that if it is shown on trial of state-jail felony that defendant has previously been finally convicted of two state jail felonies, "on conviction the defendant shall be punished for a felony of the third degree"), 12.34(a) (providing that punishment range for third-degree felony is confinement for between two to ten years plus fine of up to $10,000).

one gram of methamphetamine in her backpack. An officer searched her backpack and found both a syringe and a bag containing a white crystalline substance. Testing later confirmed that the substance was approximately .4 grams of methamphetamine.

A Brazoria County grand jury indicted Jinkins for the state-jail felony offense of possession of less than one gram of a controlled substance, methamphetamine. The indictment also alleged that Jinkins had two prior felony convictions.

On April 12, 2023, Jinkins pleaded guilty to the possession offense. She acknowledged in the plea paperwork that because she had two prior felony convictions, the punishment range for the charged offense was that of a third-degree felony: confinement for between two to ten years. Jinkins and the State reached an agreement on punishment. Specifically, they agreed to recommend that the trial court assess Jinkins' punishment at eight years' confinement, suspend the sentence, place her on community supervision for three years, require her to perform community service, and assess a fine and payment of restitution. The State also agreed to dismiss the initial trespass charge against Jinkins.

The trial court accepted Jinkins' guilty plea and followed the parties' agreement. In the judgment of conviction, the court assessed Jinkins' punishment at eight years' confinement, suspended the sentence, and placed her on community supervision for three years. The community supervision conditions required Jinkins to "[r]eport in person to the Community Supervision Officer on or before the 28th

day of each month hereafter or at such other times as directed by the Court or Community Supervision Officer and submit a truthful report form." The conditions also required Jinkins to complete 120 hours of community service at a rate of at least 16 hours per month.

Four months after Jinkins pleaded guilty, the State moved to revoke Jinkins' community supervision. The State alleged that Jinkins failed to report to her community supervision officer in May, June, and July 2023. The State further alleged that Jinkins failed to complete her community service hours during April, May, June, and July 2023. The State requested that the court revoke Jinkins' community supervision and assess her punishment at eight years' confinement.

The trial court held an evidentiary hearing on the State's motion to revoke. At the hearing, Cheyenne Wilson, Jinkins' community supervision officer, testified that Jinkins' initial intake appointment was scheduled for May 10, 2023, but Jinkins did not appear for that appointment. Her appointment was automatically rescheduled for May 25, 2023, and Jinkins was informed by several means, including letter, text message, and voicemail. Jinkins did not appear for her May 25 appointment.

Jinkins called Wilson on May 31 and informed her that she has a mental illness. Wilson requested that Jinkins provide verification and documentation of her diagnosis, and she informed Jinkins that her next appointment date would be June 6. Jinkins did not report on June 6, nor did she report on the following two dates for

which her appointment was rescheduled: June 20 and June 30. Jinkins never reported to Wilson in person, and she never provided documentation about any mental illnesses. Wilson also testified that Jinkins did not complete any community service hours during April, May, June, or July 2023.

Jinkins testified on her own behalf. When asked why she did not show up to any of the appointments with Wilson, she stated, "I don't have any excuse. There isn't a reason." She also testified that she was in a hospital in Lake Jackson, but she did not recall the dates of her hospitalization. She acknowledged that she did not perform any community service, stating that she "was in the process of taking care of [her] mental health" and "never got a chance to report." She did not provide any documentation of diagnoses or hospitalizations.[2] Jinkins requested that the trial court continue her probation, place her on the "mental health caseload," and require her to complete either outpatient drug rehabilitation or an "intermediate sanction facility that might be inpatient."

During closing arguments, defense counsel requested that the trial court amend, rather than revoke, Jinkins' community supervision. Counsel also requested

---

[2]   On cross-examination, Jinkins testified that she was schizoaffective and had "tics," which her counsel described as "a condition similar to Tourette's." She had not been "properly diagnosed," but at one point she had received treatment at St. Joseph's Hospital, which "should have the records."

that if the court decided to sentence Jinkins to confinement, that the court assess her punishment "at a lower sentence rather than the maximum, eight years."

The trial court found that Jinkins violated two conditions of her community supervision by failing to report to her community supervision officer in May, June, and July 2023 and by failing to complete community service hours in April, May, June, and July 2023. The court revoked Jinkins' community supervision and assessed her punishment at six years' confinement. Defense counsel did not object to Jinkins' sentence at the time it was pronounced, nor did counsel file any post-judgment motions challenging the sentence. This appeal followed.

## Revocation of Community Supervision

In her first issue, Jinkins argues that the State failed to present sufficient evidence to support revocation of her community supervision. She argues that she was unable to report for community supervision appointments and was unable to perform her required community service hours because she was hospitalized due to mental health struggles, and therefore the State did not prove by a preponderance of the evidence that she violated two conditions of her community supervision.

## A.     Standard of Review

When reviewing an order revoking community supervision, the sole question before us is whether the trial court abused its discretion. *Hacker v. State*, 389 S.W.3d

860, 865 (Tex. Crim. App. 2013); *Davis v. State*, 591 S.W.3d 183, 188 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

The trial court has discretion to revoke a defendant's community supervision when a preponderance of the evidence supports one of the State's allegations that the defendant has violated a condition of community supervision. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex. Crim. App. 2012) (op. on reh'g); *Cazarez v. State*, 606 S.W.3d 549, 558 (Tex. App.—Houston [1st Dist.] 2020, no pet.). In this context, a preponderance of the evidence means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Hacker*, 389 S.W.3d at 865 (quoting *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006)).

"Only one sufficient ground is necessary to support a trial court's decision to revoke community supervision." *Cazarez*, 606 S.W.3d at 559; *see Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012) ("[P]roof of a single violation will support revocation."). The trial court is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Hacker*, 389 S.W.3d at 865. The trial court abuses its discretion by revoking a defendant's community supervision if, "as to every ground alleged, the State fails to meet its burden of proof." *Cazarez*, 606 S.W.3d at 559.

**B. Whether the State Proved by a Preponderance of the Evidence That Jinkins Violated Community Supervision Conditions**

The trial court found that Jinkins violated two conditions of her community supervision: (1) that she report in person to her community supervision officer on or before the 28th day of each month, or at such other times as directed by the court or community supervision officer; and (2) that she perform 120 hours of community service at a rate of at least 16 hours per month. Specifically, the court found that Jinkins failed to report to her community supervision officer in May, June, and July 2023 and that she failed to complete community service in April, May, June, and July 2023.[3] On appeal, Jinkins argues that the State failed to prove by a preponderance of the evidence that she violated the conditions "because she sought hospitalization to address her mental instability caused by schizophrenia," and she was therefore unable to comply with either condition. We disagree that the State failed to meet its burden.

---

[3] On appeal, the State argues that because Jinkins "raised no objection in the trial court, . . . the issue of the sufficiency of the evidence supporting the trial court's revocation is not preserved for appeal." The Court of Criminal Appeals has held, however, that "[a] claim regarding sufficiency of the evidence need not be preserved for review at the trial level and is not waived by the failure to do so." *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001); *see also McFarland v. State*, 930 S.W.2d 99, 100 (Tex. Crim. App. 1996) ("An appellate court must always address challenges to the sufficiency of the evidence."). We conclude that Jinkins was not required to preserve her challenge to the sufficiency of the evidence supporting revocation of her community supervision at the trial level, and therefore this issue is properly before us.

At the revocation hearing, Cheyenne Wilson, a probation officer with the Brazoria County Community Supervision Department, testified that Jinkins' case was assigned to her. The court placed Jinkins on community supervision on April 12, 2023, and the community supervision department scheduled Jinkins' initial intake appointment for May 10, 2023. Jinkins did not show up for that appointment. The community supervision department automatically rescheduled Jinkins' appointment for May 25, 2023, and notified her by email or letter, text message, and phone call or voicemail.

Jinkins also failed to report on May 25. On May 31, 2023, Jinkins called Wilson and explained that she struggled with mental illness. When Wilson asked if Jinkins could provide verification of her diagnosis, Jinkins "told [Wilson] that she could bring it to the office visit or email them to [Wilson]." Wilson rescheduled Jinkins' appointment for June 6, 2023, and told Jinkins of her new appointment date. Jinkins agreed that she would report on that date and provide documentation of her mental illness.

Jinkins did not, however, report on June 6. She also did not respond to Wilson's attempts to reach her by letter, phone call, or text. Wilson rescheduled Jinkins' appointment to June 20, 2023, and then to June 30, 2023, but Jinkins did not appear on either of those dates. Other than the phone call on May 31, Wilson had

no contact with Jinkins.[4] Jinkins never reported in person. Wilson never received any documentation concerning mental illnesses or medical issues from Jinkins. Jinkins did not report completion of any community service hours to Wilson for April, May, June, or July 2023.

On cross-examination, Wilson testified that Jinkins "was recommended for the mental health caseload," and she completed a substance abuse assessment while incarcerated. After the trial court asked what the substance abuse assessment had recommended, Wilson stated that the assessment "recommend[ed] residential treatment, engage in mental health and substance abuse recovery, [and] mental health court if diagnosis can be verified." Jinkins had not completed a mental health evaluation.

Probation officer Erin Harris elaborated on the department's recommendation for Jinkins. The department recommended that the court place Jinkins in a "secure treatment facility" to address her substance abuse issues, which included daily methamphetamine use. The department also recommended placing Jinkins on the

---

[4]     When asked whether Wilson had any contact with Jinkins in July 2023, Wilson testified that she had no contact with Jinkins and "[t]he letters were being returned back; and when we would call her phone, we were unable to leave a voicemail at that point." When Wilson spoke with Jinkins on May 31, Jinkins indicated that she was calling from someone else's phone and that number was not a contact number for her.

"mental health caseload." Jinkins informed Harris that she "would like to participate in the mental health court."

Jinkins testified on her own behalf. She acknowledged that she did not report for any meeting with Wilson, nor did she perform community service for any of the months alleged by the State. When asked why she did not report for meetings with Wilson, she stated, "I don't have any excuse. There isn't a reason." She testified that she was hospitalized in Lake Jackson, but she did not recall the dates of that hospitalization. When asked why she did not complete community service, Jinkins stated that she "was in the process of taking care of [her] mental stability" and she "never got a chance to report."

On cross-examination, Jinkins testified that she checked herself into the hospital for her "mental stability." She could not state when the hospitalization occurred relative to being placed on community supervision, the month of her hospitalization, or how long she was hospitalized. She stated that she was schizoaffective and had tics, although she had not been "properly diagnosed." She had received treatment at St. Joseph's Hospital, which "should have the records." Jinkins did not offer any documentary evidence relating to her mental health.

We agree with the State that the preponderance of the evidence supports the trial court's findings that Jinkins violated two conditions of her community supervision. In addition to Wilson's testimony that Jinkins never reported for her

initial intake appointment and that she never completed any community service hours, Jinkins acknowledged that she did not comply with either condition of her community supervision. Although Jinkins testified that she did not report or complete community service because she was addressing mental health concerns—including through hospitalization in Lake Jackson—she provided no details to the trial court concerning this hospitalization. Jinkins was unable to say when she had been hospitalized or for how long. Wilson asked Jinkins for documentation to verify her mental health issues, and the Brazoria County Community Supervision Department expressed willingness to place Jinkins on the "mental health caseload" to provide her assistance, but Jinkins never submitted any documentation to Wilson, the department, or the trial court.

As the factfinder at the revocation hearing, the trial court was the sole judge of the credibility of the witnesses and the weight to give their testimony. *See Hacker*, 389 S.W.3d at 865. The trial court could have credited Wilson's testimony and disbelieved Jinkins' testimony that she was unable to report or complete community service due to her mental health. We conclude that the "greater weight of the credible evidence" created a reasonable belief that Jinkins violated two conditions of her community supervision, as found by the trial court. *See id.* (quoting *Rickels*, 202 S.W.3d at 764). We therefore hold that the trial court did not abuse its discretion by revoking Jinkins' community supervision. *See id.*; *Cazarez*, 606 S.W.3d at 558.

We overrule Jinkins' first issue.

## Excessive and Disproportionate Punishment

In her second issue, Jinkins argues that by imposing a six-year sentence, the trial court failed to consider that her mental health issues presented a valid reason for not complying with her community supervision conditions. She further argues that the sentence was "excessive and disproportionate" compared to "the community supervision conditions which [she] violated." The State argues that Jinkins failed to preserve her complaint for appellate review because she did not object to her sentence at the time of sentencing or in a post-trial motion. We agree with the State.

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. Generally, a punishment assessed within the statutory range is "not excessive, cruel, or unusual." *See State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) ("[W]e have described the sentencer's discretion to impose any punishment within the prescribed range to be essentially unfettered.") (quotations omitted). However, although the Constitution does not require "strict proportionality" between the offense and the sentence, it does prohibit extreme sentences that are "grossly disproportionate" to the offense. *See Simpson*, 488 S.W.3d at 322 (citations and quotations omitted); *Toledo v. State*, 519 S.W.3d 273, 284–85 (Tex. App.—Houston [1st Dist.] 2017, pet.

13

ref'd). A sentence is grossly disproportionate "only in the exceedingly rare or extreme case." *Simpson*, 488 S.W.3d at 322–23 (citing *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)).

"It is well established that almost every right, constitutional and statutory, may be waived by failing to object." *Jacoby v. State*, 227 S.W.3d 128, 130 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The constitutional right to be free from a disproportionate sentence is no exception. *See id.*; *Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("The constitutional right to be free from cruel and unusual punishment may be waived."). "The failure to specifically object to an alleged disproportionate sentence in the trial court or in a post-trial motion waives any error." *Jacoby*, 227 S.W.3d at 130; *see* TEX. R. APP. P. 33.1(a) (stating that to preserve error, record must show complaint to trial court by timely request, objection, or motion that specifically stated grounds for ruling sought, and trial court ruled on request); *Noland v. State*, 264 S.W.3d 144, 152 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (requiring objection that specifically states legal basis for complaint to preserve Eighth Amendment challenge to sentence).

Here, Jinkins did not object that her sentence was excessive or grossly disproportionate at the time of sentencing or in a post-hearing motion. Instead, the first time that she raised a complaint about her sentence was in her brief on appeal.

We conclude that Jinkins did not make a timely and specific objection in the trial court raising her complaint that her sentence was excessive or grossly disproportionate. *See Jacoby*, 227 S.W.3d at 130. We hold that Jinkins failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a); *Jacoby*, 227 S.W.3d at 130.

We overrule Jinkins' second issue.

**Modification of Judgment**

The trial court's judgment of conviction signed after the revocation hearing states that Jinkins pleaded "True" to the allegations in the State's motion to revoke that she violated condition 6 and condition 29 of her community supervision conditions. The appellate record, however, reflects that this is incorrect.

An appellate court has authority to reform a judgment to make the record speak the truth when the matter has been called to its attention by any source. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting reasoning of Dallas Court of Appeals sitting en banc in *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd)); *Van Flowers v. State*, 629 S.W.3d 707, 710–11 (Tex. App.—Houston [1st Dist.] 2021, no pet.). We may do so on our own motion if the parties do not raise the error. *Vasquez v. State*, 674 S.W.3d 593, 599 (Tex. App.—Houston [1st Dist.] 2023, no pet.). The Texas Rules of Appellate Procedure also provide "direct authority" for an appellate court to modify a trial court's

15

judgment. *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) (modifying judgment to reflect that defendant pleaded "not guilty" to underlying offense); TEX. R. APP. P. 43.2(b) (providing that appellate court may "modify the trial court's judgment and affirm it as modified").

At the revocation hearing, Jinkins initially indicated her intent to plead "True" to the allegations in the State's motion to revoke that she violated two conditions of her community supervision. The trial court and defense counsel, however, then explained that Jinkins was "entitled to have a hearing and have the State prove these violations," and the court asked whether Jinkins wanted to plead "True" or make the State "prove up those violations." After a brief discussion with the court, Jinkins stated on the record that she wanted to "[h]ave the State prove" the alleged violations. The trial court then held an evidentiary hearing on the State's motion to revoke.

The appellate record therefore reflects that Jinkins did not plead "True" to the allegations in the State's motion to revoke. Accordingly, we modify the judgment of the trial court to state "Not True" with respect to Jinkins' "Plea to Motion to Revoke."

16

## Conclusion

We modify the judgment of the trial court to delete the finding of "True" and reflect that Jinkins pleaded "Not True" to the State's motion to revoke. We affirm the judgment as modified.

David Gunn
Justice

Panel consists of Justices Goodman, Guerra, and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).

17