

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CALVIN WALLACE, JR., | § | No. 08-24-00069-CV |
| Appellant, | § | Appeal from the |
| v. | § | 440th Judicial District Court |
| The 52nd JUDICIAL DISTRICT COURT OF CORYELL COUNTY, TEXAS, and SANDY GATELY, | § § | of Coryell County, Texas (TC# DC-24-55462) |
| Appellees. | | |

**<u>MEMORANDUM OPINION</u>**[1]

Calvin Wallace, Appellant here, filed a pro se inmate proceeding below that was summarily dismissed by the trial court under Chapter 14 of the Texas Civil Practice and Remedies Code. After carefully considering his complaints on appeal, we find the trial court could have reasonably concluded Appellant's claims had no arguable basis in law. We affirm.

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Tenth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. 41.3.

# I. BACKGROUND

## A. Gist of the petition below.

On January 30, 2024, Appellant filed this civil suit seeking equitable and declaratory relief against the 52nd Judicial District Court, Coryell County, Texas, and Sandy Gately, his former defense counsel, in their official, legal and/or individual capacities. The suit requests a determination under the Uniform Declaratory Judgment Act (UDJA) that an un-notarized affidavit submitted by Gately in a prior post-conviction habeas corpus proceeding, and allegedly relied on by the trial court to deny relief, was void as a matter of law. Appellant alternatively complains that specific provisions in the Government Code and Code of Criminal Procedure are unconstitutional as applied to him. The suit seeks a declaration to that effect and a declaration that Appellant's right to a fair and impartial habeas corpus proceeding under Article 11.07 of the Texas Code of Criminal Procedure was denied (rendering that prior decision – in Appellant's own words – "wholly voidable").

## B. The prior offense, plea agreement and revocation.

We start with some contextual background.[2] Appellant was charged with delivery of methamphetamine in a drug-free zone on August 18, 2015. *Wallace v. State*, No. 13-18-00588-CR, 2019 WL 3486736, at \*1 (Tex. App.—Corpus Christi–Edinburg Aug. 1, 2019, no pet.) (mem. op., not designated for publication). Attorney Gately was appointed to defend Appellant on the charge.

---

[2] Because the limited record before us consists almost entirely of Appellant's pleadings, we take judicial notice of, and include here, some of the factual and procedural background information recounted in (1) *Wallace v. State*, No. 13-18-00588-CR, 2019 WL 3486736 (Tex. App.—Corpus Christi–Edinburg Aug. 1, 2019, no pet.) (mem. op., not designated for publication); and (2) *Wallace v. Lumpkin*, No. W-20-CV-918-ADA, 2021 WL 4749507 (W.D. Texas, October 12, 2021) (orig. proceeding). We are authorized to take judicial notice of adjudicative facts. *See* Tex. R. Evid. 201; *Chapa v. State*, 729 S.W.2d 723, 728 n. 3 (Tex. Crim. App. 1987) (en banc); *see also McCormick, Handbook of Law of Evidence* § 328 (8th. Ed. 2022). Adjudicative facts are "facts about the particular event which gave rise to the lawsuit and . . . [help] explain who did what, when, where, [and] how . . ." *McCormick on Evidence* § 333.

In May 2017, Appellant agreed to a plea deal whereby he pleaded guilty to the second-degree felony offense of knowingly delivering methamphetamine in the amount of more than one but less than four grams, enhanced by a finding that the offense occurred in a drug-free zone. *Id.* at *1. In exchange, the trial court approved a judgment assessing eight years of community supervision under a deferred adjudication plea.

In 2018, the State moved to revoke probation and adjudicate Appellant's guilt based on several violations of his community supervision terms. *Id.* A new attorney represented Appellant in the revocation proceeding. In September 2018, having found "true" on six of the seven violations asserted, the court found Appellant guilty of the offense alleged and assessed punishment at 15 years in the Texas Department of Criminal Justice. *Id.* Appellant appealed the revocation/conviction judgment. His appellate lawyer (not Gately or his revocation counsel) filed an *Anders*[3] brief after finding no arguably meritorious grounds for review. *Id.* at *1. The appellate court agreed and affirmed the judgment. Appellant did not pursue a further direct appeal to the Texas Court of Criminal Appeals. *Id.*

### C. Post-conviction proceedings.

In March 2020, Appellant filed a pro se habeas corpus application in the 52nd Judicial District, Coryell County, Texas. The application cited ineffective-assistance-of-counsel grounds against Gately, and against Appellant's revocation counsel. Appellant claimed both attorneys failed to perform an independent factual investigation, rendering Appellant's "guilty" plea involuntary.

---

[3] *Anders v. California*, 386 U.S. 738, 744 (1967) (outlining duties of attorney who concludes there is no arguable basis for an appeal).

Appellant also alleged that Gately, specifically, failed (1) to move to quash the indictment; and (2) to disclose discovery, violating Appellant's right to examine the evidence against him.

The record before us includes only one document from the state court habeas corpus proceedings. It is an un-notarized affidavit signed by Gately. It reflects a Coryell County clerk file-stamp date of May 5, 2020. The affidavit contains Gately's responses to Appellant's complaints about her conduct of the defense in the prior criminal proceeding.

On May 19, 2020, the state court entered Findings and Conclusions, recommending the denial of Appellant's application. In August 2020, the Texas Court of Criminal Appeals denied Appellant's habeas corpus application without a written order.

In September 2020, Appellant, again appearing pro se, filed for federal habeas corpus relief with the United States District Court for the Western District of Texas. *See Wallace v. Lumpkin*, No. W-20-CV-918-ADA, 2021 WL 4749507 at *1 (W.D. Texas, October 12, 2021) (orig. proceeding). The federal petition mirrored the state petition but added additional allegations against Gately and Appellant's revocation attorney. The federal court denied the petition for habeas corpus and declined to submit a certificate of appealability. *Id.* at *6.

**D. January 2024 civil suit, and subsequent Chapter 14 dismissal.**

As noted above, in late January 2024, Appellant filed this civil suit in the 440th District Court of Coryell County seeking a declaration that Gately's un-notarized affidavit filed in the state habeas proceeding was void. The suit also alleged that Gately and the trial court committed fraud upon Appellant by respectively submitting and accepting the allegedly void affidavit. On February 15, 2024, citing Chapter 14 of the Texas Civil Practice & Remedies Code, the trial court dismissed

4

the suit *sua sponte*.[4] After the dismissal, the named defendants filed responsive pleadings. On behalf of the 52nd Judicial District Court, the State of Texas filed an answer, and a plea alleging that the court lacked jurisdiction because Appellant had demonstrated no statutory waiver of judicial immunity. Gately's answer alleged that, because the state habeas corpus application had been resolved almost four years earlier, limitations, laches, and estoppel barred Appellant's claims.

## II.    ISSUES ON APPEAL

Appellant raises five issues on appeal that we condense down to three overarching arguments. First, he claims the trial court abused its discretion when it dismissed his civil suit because the suit was neither frivolous nor malicious under Chapter 14. Second, he challenges the trial court's failure to include specific grounds (such as findings either that Appellant's claims were frivolous or malicious, or that his claims had no arguable basis in law) in its Order and its failure to issue findings of fact and conclusions of law despite Appellant's timely request. Third, he claims the effect of the dismissal is to raise an "iron curtain"[5] preventing inmate litigation and creating a stance of disenfranchisement which violates Appellant's right to challenge the constitutionality of statutes.[6]

---

[4] Chapter 14 "applies only to an action . . . brought by an inmate . . . , in which an affidavit or unsworn declaration of inability to pay costs is filed by the inmate." *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.002(a). A trial court is expressly authorized to dismiss inmate suits either before or after service of process based on criteria outlined in the statute. *Id*. § 14.003(a)(2).

[5] *See Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974) (stating, "There is no iron curtain drawn between the Constitution and the prisons of this country.").

[6] Sifting through his appellate briefing, we note that Appellant further claims (1) Gately committed additional fraud and perjury by filing an "untimely" [post-dismissal] answer, in which she verified that a copy of the pleading was served on Appellant when Appellant never received a copy; (2) the trial court continued to commit fraud when, in an attempt to keep certain documents "secret," it failed to send a timely and complete copy of the clerk's record to Appellant; and (3) the Texas Attorney General and the trial court participated in prohibited *ex parte* communications when the AG sent a post-dismissal letter directly to the court (with no copy to Appellant) asking the court to execute its proposed Order granting the State's plea to the jurisdiction. These claims are not relevant here, because they

## III.  DISCUSSION

### A.  Standard of review and controlling law.

Chapter 14 was enacted by the Texas legislature to conserve judicial resources and stem the tide of frivolous lawsuits filed by pro se inmates. *Jackson v. Thaler*, No. 10-11-00323-CV, 2012 WL 662335, at *1 (Tex. App.—Waco Feb. 29, 2012, pet. denied) (mem. op.) (citing *Hickson v. Moya*, 926 S.W.2d 397, 399 (Tex. App.—Waco 1996, no pet.)). Chapter 14 grants broad discretion to trial courts to dismiss inmate suits on the merits where the claims asserted are determined to be frivolous or malicious. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.003(a)(2); *Thomas v. State*, No. 10-16-00283-CV, 2017 WL 218938, at *1, 2 (Tex. App.—Waco Jan. 18, 2017, pet. denied). "This broad discretion serves the dual role of keeping the courthouse open to all litigants regardless of their financial resources, while guarding against abuse of the free access granted . . . to litigants, such as prisoners, who have nothing to lose by 'flooding the courts with suit after suit.'" *See Spellmon v. Sweeny*, 819 S.W.2d 206, 209 (Tex. App.—Waco 1991, no writ) (quoting *Wilson v. Lynaugh*, 878 F.2d 846, 849–850 (5th Cir. 1989)). On that basis, we generally review a trial court's dismissal of an inmate's lawsuit under Chapter 14 for an abuse of discretion. *See Powell v. Clements*, 220 S.W.3d 138, 139 (Tex. App.—Waco 2007, pet. denied).

Yet when a court determines without a hearing[7] that an inmate's claims are frivolous, the issue on appeal is limited to whether the claims have an arguable basis in law. *See* Tex. Civ. Prac.

---

complain of actions that took place post-dismissal, or at a time the case was inactive. Any complaint about the clerk's record is governed by Tex. R. App. Proc. 34.1, 34.5 and 35.3, none of which we find were violated here.

[7] The statute authorizes a court to determine whether to hold a hearing prior to dismissing claims. *See* Tex. Civ. Prac. & Rem. Code Ann § 14.003(c); *cf.*, *Johns v. Johnson*, No. 10-03-00388-CV, 2005 WL 428465, at *1 (Tex. App.—Waco Feb.23, 2005, no pet.) (mem. op.) (citing *Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 459 (Tex. App.—Tyler 1999, pet. denied)) (clarifying that a fact hearing on frivolousness is necessary only if the claim has an arguable basis in law).

& Rem. Code Ann. § 14.003(a); *Long v. Tanner*, 170 S.W.3d 752, 754 (Tex. App.—Waco 2005, pet. denied) (citing *Retzlaff v. Tex. Dep't of Crim. Justice.*, 94 S.W.3d 650, 653 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)). "A claim has no arguable basis in law if it relies upon an indisputably meritless legal theory." *Reece v. Johnson*, No. 10-12-00077-CV, 2013 WL 4511930, at *1 (Tex. App.—Waco August 22, 2013, no pet.) (mem. op.) (quoting *Hamilton v. Williams*, 298 S.W.3d 334, 339 (Tex. App.—Fort Worth 2009, pet. denied)).

Whether a claim has an arguable basis in law is a legal question that we review de novo, taking all allegations of the plaintiff's petition to be true. *Tanner*, 170 S.W.3d at 754; *Reese*, 2013 WL 4511930, at *1 (citing *Jackson v. Tex. Dep't Crim. Justice–Inst. Div.*, 28 S.W.3d 811, 813 (Tex. App.—Corpus Christi 2000, pet. denied)). If the dismissal does not specify the grounds for the determination, the trial court's decision will be affirmed if it is proper under any legal theory. *Hosea v. Dominguez*, 668 S.W.3d 704, 708 (Tex. App.—El Paso 2022, pet. denied) (citing *Camacho v. Rosales*, 511 S.W.3d 82, 85 (Tex. App.—El Paso 2014, no pet)). Where the claim has no arguable basis in law, dismissal with prejudice is proper. *Hamilton*, 298 S.W.3d at 340.

**B. Analysis: Appellant's claims have no arguable basis in law.**

Our review here is limited to whether, as a matter of law, the petition stated any cause of action that would authorize relief. *Thomas*, 2017 WL 218938, at *1 (citing *Spulock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App.—San Antonio 2002, no pet.)); *Spellmon*, 819 S.W.2d at 209 (citing *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986)) (noting that, as is often necessary with pro se pleadings, appellate courts must "sift the claims" until satisfied of their merit or lack of merit). For four reasons, we conclude the trial court could have properly dismissed this suit.

### (1) The petition on its face seeks either an advisory opinion, or relief that cannot be granted

The allegations in the petition place Appellant in a box from which there is no escape. On the one hand, the petition seeks a declaration that an affidavit filed in a prior post-conviction habeas proceeding was void because it was not notarized. But to what end? Such a declaration would not meet the stated purpose of the UDJA which is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b). A declaratory judgment is appropriate only where there is a justiciable controversy about the rights and status of the parties and the declaration will resolve the controversy. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). The UDJA does not empower courts to issue advisory opinions. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 164 (Tex. 2004). Yet that is what a declaration about the quality of the evidence that the habeas court may have considered some four years ago would be: a mere advisory opinion which no court has jurisdiction to issue. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (explaining, "we have construed [the Texas Constitution's] separation of powers article to prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial department."); and *Morrow v. Corbin*, 62 S.W.2d 641, 646 (1933) (confirming that, under the Texas constitution, appellate court jurisdiction does not extend to issuing advisory opinions).

On the other hand, if Appellant's suit seeks to somehow re-open or set aside the ruling on the habeas application, the Code of Criminal Procedure bars that recourse. A statutory habeas corpus application was Appellant's exclusive avenue to challenge his conviction. For felony convictions in non-death penalty cases, habeas procedures are dictated by Article 11.07 of the

8

Texas Code of Criminal Procedure. That article sets out a detailed scheme for filing and resolving post-conviction claims.[8] And significant here, nothing allows for a collateral attack on the judgment in the habeas proceeding. Article 11.07 unequivocally states: "After conviction the procedure outlined in this Act shall be exclusive and any other proceeding shall be void and of no force and effect in discharging the prisoner." *Id*. art. 11.07 §5. Moreover, Article 11.07 has its own tightly woven requirements for successive habeas applications which Appellant's pleading does not attempt to meet. *Id*. art. 11.07 §4. Thus, Appellant's petition, if it seeks anything more than an advisory declaration, would be subject to dismissal as an improper end-run around Article 11.07. *See Reger v. Criminal Dist. Att'y of Tarrant Cnty.*, No. 02-09-00363-CV, 2011 WL 3546631, at *4 (Tex. App.—Fort Worth Aug. 11, 2011, pet. denied) (mem. op.) (treating mandamus as an improper vehicle to obtain evidence from district attorney's file in order to set aside prior conviction).[9]

---

[8] Under that statute, the habeas corpus application is filed with the clerk of the convicting court and then forwarded to the Court of Criminal Appeals. Tex. Code Crim. Proc. Ann. art. 11.07 § 3(b). Once docketed in the CCA, a copy is sent to the state's attorney who must file an answer. *Id.* The convicting court then must "decide whether there are controverted, previously unresolved facts material to the legality of the applicant's confinement." *Id.* § (3)(d). If there are no such issues, "the clerk shall immediately transmit to the Court of Criminal Appeals a copy of the application, any answers filed, and a certificate reciting the date upon which that finding was made." *Id.* But if the convicting court decides that there are such issues, the case proceeds and the "court may order affidavits, depositions, interrogatories, additional forensic testing, and hearings, as well as using personal recollection." *Id.* "The convicting court may appoint an attorney or a magistrate to hold a hearing and make findings of fact." *Id.* The clerk then transmits to the Court of Criminal Appeals the application, any answers filed, any motions filed, transcripts of all depositions and hearings, any affidavits, and any other matters such as official records used by the court in resolving issues of fact. *Id.*

The Court of Criminal Appeals may then "deny relief upon the findings and conclusions of the hearing judge without docketing the cause, or may direct that the cause be docketed and heard as though originally presented to said court or as an appeal." *Id*. §5.

[9] Exclusive jurisdiction over post-conviction relief from felony convictions is vested in the Texas Court of Criminal Appeals. *Higgins v. Blount*, No. 07–12–00093–CV, 2013 WL 2244118, at *3 (Tex. App.—Amarillo May 17, 2013, pet. denied) (mem. op.) (citing *Ater v. Eighth Court of Appeals*, 802 S.W.2d 241, 243 (Tex.1991) (orig. proceeding) and *Bd. of Pardons & Paroles ex rel. Keene v. Court of Appeals for the Eighth Dist.*, 910 S.W.2d 481, 483 (Tex. Crim. App. 1995) (orig. proceeding) (per curiam) (en banc)).

**(2) The 52nd District Court is protected by sovereign immunity which UDJA relief cannot overcome.**

The petition's allegations against the 52nd district court would fail as a matter of law for another reason. The district court (to the extent it could even be a proper party) is an arm of the state entitled to sovereign immunity.[10] That court is created by statute, Tex. Gov't Code Ann. § 24.154, under the authority of the Texas Constitution. Tex. Const. art. 5 § 1 ("The judicial power of this State shall be vested in . . . in District Courts . . ."). Unless waived by the legislature, sovereign immunity deprives the trial court (here the 440th District Court) of jurisdiction to hear the case. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009).

Appellant's pleading seeks to overcome this impediment by claiming the district court acted *ultra vires*, which is a recognized exception to sovereign immunity. *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016) (confirming that, while governmental [or "sovereign"] immunity provides broad protection to the state and its officers, it does not bar a suit where an officer acts outside his legal authority, or acts "*ultra vires*"). And Appellant's basis for that claim is that the statutory definition of an affidavit is "a statement in writing or a fact or facts signed by the party making it, *sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office*." *See* Tex. Gov't.

---

[10] The judge of that court (not named as a party) would enjoy absolute judicial immunity. *Calton v. Schiller*, 498 S.W.3d 247, 252 (Tex. App.—Texarkana 2016, pet. denied); *see also Kennedy v. Staples*, 336 S.W.3d 745, 752 (Tex. App.—Texarkana 2011, no pet.) ("A judge acting in his or her official judicial capacity enjoys absolute immunity from liability for judicial acts performed within the scope of jurisdiction."); *Albert v. Adelstein*, No. 02–13–00073–CV, 2013 WL 4017511, at *2 (Tex. App.—Fort Worth Aug. 8, 2013, no pet.) (per curiam) (mem. op.) (citing *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)) (explaining that judicial immunity extends to actions that are done in error, maliciously, and even in excess of the judge's authority). Judicial immunity deprives a court of subject matter jurisdiction. *Dallas Cty. v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002). It grants a judge acting in his or her official judicial capacity absolute immunity from liability for judicial acts performed within the scope of jurisdiction. *Id.* Judicial immunity applies unless the plaintiff can show: (1) the claim is based on some act not taken in the judge's judicial capacity; or (2) the judge's actions were taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 10–12 (1991).

Code § 312.011(1) (emphasis added). Appellant concludes that a trial court has no discretion to consider an affidavit that does not meet those requirements, and to do so would be an *ultra vires* act.

Assuming without deciding that view is even correct, [11] it does not negate the protection of sovereign immunity here. The UDJA, under which Appellant seeks a pronouncement that the affidavit is void, does not provide retrospective relief. The purpose of a declaratory-judgment action is to establish the *currently* existing rights, status, or other legal relationships between parties. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009(b). "Suits for declaratory judgment are intended to determine the rights of parties when a controversy has arisen, but *before* any wrong has been committed." *Wright v. Jones*, 674 S.W.3d 704, 709 (Tex. App.—Waco 2023, no pet.) (citing *Armstrong v. Hixon*, 206 S.W.3d 175, 179 (Tex. App.—Corpus Christi 2006, pet. denied)) (emphasis added). Yet the relief that Appellant seeks is necessarily retrospective, and in this context, would fail to overcome immunity based on an *ultra vires* theory.

In *Higgins*, a pro se inmate's civil suit against a judge and two assistant district attorneys was similarly dismissed under Chapter 14. *Higgins v. Blount*, No. 07–12–00093–CV, 2013 WL 2244118, at *1 (Tex. App.—Amarillo May 17, 2013, pet. denied) (mem. op.). In part, Higgins sought a declaratory judgment that the defendants had violated certain laws during Higgins' prior criminal trial. *Id.* at *1, 2. Discussing whether Higgins' claims fell into the *ultra vires* exception for judicial immunity, the court emphasized their retrospective nature, confirming the Act, in

---

[11] While we need not reach the issue, we note authority for the proposition that courts may take an attorney's unsworn statements as evidence "when the circumstances clearly indicate the attorney is tendering evidence on the record based on personal knowledge and the opposing party fails to object." *Vaccaro v. Raymond James & Assoc., Inc.*, 655 S.W.3d 485, 491–492 (Tex. App.—Fort Worth 2022, no pet.) (citing *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005)); *see also Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (holding attorney's unsworn statements constituted sufficient evidence absent timely objection).

contrast, "is preventative in nature." *Id*. at *3 (citing *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam)). Because the relief Higgins sought was decidedly retrospective, his claim for a declaratory judgment lacked any arguable basis in law, providing one of the bases for the appellate court's affirmation of the trial court's Chapter 14 dismissal. *Id*. at *3, 4.

The Houston 1st reached the same conclusion. *Barnes v. Antu*, No. 01-13-00826, 2014 WL 2895586, at *3, n.5 (Tex. App.—Houston [1st Dist.] June 24, 2014, no pet.) (mem. op.) (citing *Higgins*, 2013 WL 2244118, at *3). In *Barnes*, a pro se inmate sued his former court-appointed defense counsel and an assistant district attorney. *Id.* at *1. Barnes claimed the defendants' identification of him as the perpetrator during his felony burglary trial misled the jury and impaired the presumption of innocence. *Id.* According to Barnes, the defendants' acts amounted to gross negligence, such that they were *ultra vires* acts, resulting in conviction. *Id*. Barnes sought relief under the UDJA, requesting a declaratory finding that his conviction was "void." *Id*. But because Barnes sought relief from past wrongs—clearly retrospective relief—the *ultra vires* exception did not apply. *Id*. at *3, n.5. On that basis, and especially where the Texas legislature made it clear that the writ of habeas corpus provides the exclusive remedy for felony post-conviction relief in state court, the appellate court confirmed the Chapter 14 dismissal, finding no arguable legal basis for Barnes' claims. *Id*. at *3, 4 (citing Tex. Code Crim. Proc. Ann. art. 11.01).

Here, too, Appellant seeks retrospective declaratory relief which, even if cognizable, would not overcome immunity. Therefore, Appellant's claims have no arguable basis in law.

### (3) The petition fails to plead any viable claim against Gately

Less clear is what claim Appellant makes against his former attorney Gately. At one point, the petition describes her conduct as "malfeasance" and "misfeasance," but then states Appellant "only seeks for the Court to determine the 'validity' of the [affidavit]." We conclude that the trial

12

court could have dismissed the suit against Gately because it fails to allege any cognizable claim against her.

The most that can be gleaned from the petition is an allegation that Gately failed to sign the jurat portion of an affidavit filed with the papers in Appellant's habeas application. At the time, Gately was not Appellant's attorney of record. While Gately certainly owed duties to Appellant when she defended him on the 2018 charge, the petition here does not allege a breach of those duties, nor could it, based on the statute of limitations for legal malpractice claims.[12] Rather, the petition alleges only that Gately failed to sign a jurat at a time she did not represent Appellant. By itself, that allegation states no viable cause of action based on any recognized duty owed by Gately.

### (4) Appellant's challenges to the Texas statutes fail.

In alternative arguments, Appellant's petition asserts that, if the trial court did not grant his declaratory relief in pronouncing the affidavit void, two Texas statutes were unconstitutional as applied to him: Tex. Gov't. Code Ann. § 312.011(1) and Tex. Code Crim. Proc. Ann. Art. 11.07 § 3(d). This claim also fails as a matter of law.

Government Code § 312.011(1) simply provides the definition of an "affidavit." Tex. Gov't Code Ann. § 312.011(1). If the trial court in the habeas proceeding failed to consider that definition when evaluating the evidence, it might mean the trial court erred in admitting or considering

---

[12] A legal malpractice claim is in the nature of a tort and is governed by the two-year statute of limitations, running from the date of accrual. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)). Gately's representation of Appellant would have ended sometime shortly after his 2018 plea bargain, but certainly more than two years before his 2024 lawsuit. Moreover, any claim of that sort would face the *Peeler* doctrine. *See Peeler v. Hughes & Luce*, 909 S.W.2d 494, 499 (Tex. 1995) (holding public policy requires that a person convicted of a criminal offense not be permitted to profit from his criminal conduct by obtaining a money damages award against his criminal-defense lawyer for legal malpractice that allegedly contributed to the client's incarceration).

evidence (an issue we do not reach). But that would not make § 312.011(1) unconstitutional, any more so than we would declare a rule of evidence unconstitutional if a trial court misapplied it.

Nor does Appellant's alternative challenge to Article 11.07 § 3(d) fare any better. That provision defines the procedures for post-conviction habeas applications. In part, it states that to make its determination, the trial court: "[M]ay order affidavits, depositions, interrogatories, additional forensic testing, and hearings, as well as using personal recollection." Tex. Code Crim. Pro. Ann. art. 11.07 § 3(d). But like Appellant's challenge to the Government Code provision, if the trial court considered something less than what would be termed an "affidavit," that would not make the statute unconstitutional as applied. It would merely make the trial court's consideration of the document erroneous—something that should have been addressed in the habeas proceeding, not in a collateral attack brought years later.

### C. Appellant's constitutional rights were not abridged

In his 2024 suit and in this appeal, Appellant generally contends that his Due Process rights and his rights to Equal Protection and Equal Access under the Texas and United States constitutions were "abridged, obstructed [and/or] impeded" both by the allegedly *ultra vires* actions of the court and his former defense counsel, and by the legislature's provision that a trial court can "arbitrarily" dismiss an inmate's claims under Chapter 14. Appellant, however, cites to no authority to support these assertions in similar scenarios. *See Toledo v. State*, 519 S.W.3d 273, 279 (Tex. App.— Houston [1st Dist.] 2017, pet denied) (citing *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015)) (confirming the party who challenges a statute bears the burden to establish that it is unconstitutional).

We begin by acknowledging the prior decisions holding the procedures proscribed by Article 11.07 meet constitutional muster. *See Thomas v. Beto*, 452 F.2d 1072, 1074 (5th Cir. 1971)

14

("Under the standards set forth by the Supreme Court in *Townsend v. Sain*, 372 U.S. 293 (1963) this court has previously approved the Texas post conviction remedy and procedures as set forth in Art. 11.07."); *Flanagan v. State of Ariz.*, 313 F. Supp. 664, 666 (S.D. Tex. 1970) ("Article 11.07 provides an effective post-conviction remedy which gives the Texas district courts the opportunity to review in a fact-finding hearing alleged constitutional deprivations."); *see also Toledo*, 519 S.W.3d at 279 (confirming all statutes are presumed to be enacted in compliance with Texas and United States constitutions). The post-conviction habeas process represents a careful legislative balance of society's right to the finality of criminal convictions, and a person's ability to seek collateral review of possible constitutional violations. *Ex parte Graves*, 70 S.W.3d 103, 117 (Tex. Crim. App. 2002) (stating, "We are not free to judicially disrupt that carefully crafted legislative scheme."). Appellant had access to and utilized that process both in State and Federal Court. We find no basis to conclude his constitutional rights were violated by the statutory procedures. Any discrepancy in how those procedures were applied should have been addressed in the prior proceedings.

Appellant also claims that the procedures in Chapter 14 violate his rights. Other courts have rejected constitutional challenges to several of Chapter 14's provisions. *See Fernandez v. T.D.C.J.*, 341 S.W.3d 6, 16 (Tex. App.—Waco 2010, no pet.) (rejecting Open Court challenge to dismissal process in Chapter 14 and collecting cases with same holding); *Richard v. Dretke*, No. 14-08-00714-CV, 2009 WL 909621, at *4 (Tex. App.—Houston [14th Dist.] Apr. 7, 2009, no pet.) (rejecting challenges under the Due Process Clause and First Amendment to Chapter 14's dismissal procedures); *Thompson v. Silvas*, No. 01-02-01083-CV, 2003 WL 22254950, at *2 (Tex. App.—Houston [1st Dist.] Oct. 2, 2003, no pet.) (stating, "Statutes governing procedural requirements of civil inmate litigation do not violate the Supremacy Clause of the United States Constitution, . . . .

15

Instead, such statutes merely impose neutral procedural requirements on pro se, indigent inmates who file civil claims in state court, which enable trial courts to discern whether the case is frivolous."); *Hines v. Massey*, 79 S.W.3d 269, 271 (Tex. App.—Beaumont 2002, no pet.) (rejecting challenges to Chapter 14 as a bill of attainder and as violating inmate's rights to equal protection); *Thomas v. Bush*, 23 S.W.3d 215, 219 (Tex. App.—Beaumont 2000, pet. denied) (rejecting claim that Chapter 14 invidiously treats inmates differently from others); *Thomas v. Wichita Gen. Hosp.*, 952 S.W.2d 936, 940 (Tex. App.—Fort Worth 1997, pet. denied) (holding Chapter 14 does not violate an inmate's First Amendment right to petition the government for redress of grievances). Appellant presents no cogent basis to find his case presents a viable constitutional challenge to Chapter 14's procedures.

Moreover, Appellant's assertion that the procedures in Chapter 14 violate his rights to due process and equal protection necessarily depends on his claim that his suit has legal merit. That is, Appellant claims the trial court below used a constitutionally defective procedure to dismiss a legally meritorious suit. Because the dismissal below was issued without a hearing and based on the petition alone, we review the dismissal under our de novo standard, asking the same question the trial court would have asked: do the claims have any arguable basis in law? For the reasons discussed above, we conclude they do not. No different procedure below would have resulted in a different answer. We overrule Appellant's constitutional challenges.

### D. The trial court had no duty to file findings and conclusions.

Appellant also claims the trial court abused its discretion by failing to respond to his timely request for findings of fact and conclusions of law after the February 2024 dismissal. *See* Tex. R. Civ. Pro. 296, 297. Texas courts have long held, however, that findings and conclusions are not

appropriate when a trial court dismisses a case without hearing any evidence. *See IKB Indus., Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997); *Retzlaff*, 94 S.W.3d at 655 (confirming no duty to file findings after dismissal of an inmate suit under Chapter 14). Thus, the trial court had no duty to file findings of fact and conclusions of law in Appellant's case. *See Thaler*, 2012 WL 662335, at *4 (citing *IKB*, 938 S.W.2d at 443).

## IV.   CONCLUSION

As the Texas Court of Criminal Appeals has noted, "[t]here must come a time when a criminal conviction is final, when the deterrent effects of certainty and immediacy of punishment outweigh the prisoner's right to endlessly litigate new claims." *Ex parte Graves*, 70 S.W.3d at 117. As discussed above, we have reached that time here. We overrule all of Appellant's issues. We affirm the trial court's dismissal, with the clarification that, because the court's decision was on the merits, the dismissal was with prejudice. *See Fernandez*, 341 S.W.3d at 6 (citing *Hamilton*, 298 S.W.3d at 340).

JEFF ALLEY, Chief Justice

November 27, 2024.

Before Alley, C.J., Palafox, and Soto, JJ.

17